CENTRAL TRUST CO. OF NEW YORK *v.* WABASH, ST. L. & P. RY. CO. *et al.*

*(Circuit Court E. D. Missouri, E. D.   June 4, 1892.)*

Nos. 2,357, 2,464.

**1. BAILMENT—DUTY TO REPAIR.**
   The rule of the civil law that a bailor for hire is bound to keep the thing in repair is not recognized by the common law, and, in the absence of express contract, the question as to which party is bound to repair largely depends on custom and usage and the character of the article.

**2. SAME—USE OF RAILWAY ROLLING STOCK—USAGE.**
   It is the usage in this country for all railroad companies receiving cars from other roads to make necessary repairs at their own expense, unless the car is inspected and branded as defective when received; and in view thereof a company which claims cars belonging to another road, and, pending a judicial determination of the title thereto, is by agreement permitted to retain and use them subject to a rental in case the decision is against it, cannot, after such decision, set off against the rental any claim for the cost of repairs.

**3. PLEADING—AMENDMENT.**
   In a controversy between two railroad companies, their receivers and creditors, as to the rentals due for the use of certain rolling stock, defendant will not be permitted, after the filing of the master's report, to amend its answer so as to interpose a new set-off, when it appears that the same claim is the subject of a cross bill pending in another court, where the matter can be adjudicated on its merits.

In Equity. This controversy arose during the process of disintegration of the Wabash, St. Louis & Pacific Railway Company under the receivership as administered by Solon Humphreys and Thomas E. Tutt. The case is now heard on exceptions to the master's report on the intervening claim of the Omaha & St. Louis Railway Company to recover compensation for the use of certain rolling stock held and used by the receivers, but which was subsequently adjudged to belong to the intervener. A full statement of the facts may be found in 42 Fed. Rep. 343, and 46 Fed. Rep. 156, the latter being a report of the opinion of Judge THAYER, overruling a demurrer to the intervening petition.

*Theodore Sheldon*, for intervener.

*F. W. Lehman*, (*W. H. Blodgett*, of counsel,) for defendant.

THAYER, District Judge. The court is unable to concur in the view that the Wabash Company is entitled to a credit in the sum of $40,607.37 for moneys said to have been expended by it in making repairs and in paying taxes and insurance on the intervener's cars and engines while the same were in the possession of the receivers, Humphreys and Tutt, or in the possession of their successor in interest, to wit, the new Wabash Company. The true relation of the receivers and their successor in interest to the equipment in question was that of bailees for hire, and a bailee of that kind is clearly liable for all repairs to the article hired that were rendered necessary by his own neglect or want of ordinary care. In a case of this character, where the bailor sues to recover compensation for the use of the article hired, and the bailee interposes an offset for repairs made while in his possession, it is the latter's duty to show that the expenditures were justifiable, that they inured to the advantage of the owner, and were not rendered necessary by any fault or neglect on the part of the bailee. Schouler, Bailm. (2d Ed.) § 23, and cases cited. There is no proof in the present case that would authorize the

court to hold that the sum of $40,607.37 was properly expended by the Wabash Company in repairing equipment of the intervener that had got out of order as the result of ordinary wear and tear, and without fault on the part of the bailee. Even if it be conceded that the bailee would be equitably entitled to an allowance for expenditures in repairing such defects in equipment as were not due to the bailee's fault, yet there is no evidence in the case that would enable the court to say what portion of the total sum claimed as an offset was so expended, and is properly chargeable to the Omaha Company.

But the court is of the opinion that none of the offsets interposed by the Wabash Company can be allowed for another reason. By the civil law, the bailor for hire was generally bound to keep the thing in order, or in a state of repair suitable for use. No such absolute liability, however, is recognized by the common law. Whether the bailor or the bailee is bound at common law to pay the ordinary expenses incident to keeping the article hired in a state of repair while in the custody of the bailee, seems to depend largely on custom and usage and the character of the article, when the matter is not regulated by express contract between the parties. Schouler, Bailm. § 152; Story, Bailm. (9th Ed.) §§ 388, 389, 392. The evidence in the case at bar shows that all railroads in this country are in the habit of repairing cars received from other roads at their own expense if repairs are deemed necessary, unless the car is inspected and branded as defective when it is received. This practice has become so universal that it has been formulated as a rule by the Master Car Builders' Association, to which rule all of the leading railroad companies throughout the country have assented. (The letter written by the general agent of the receivers under date of March 1, 1886,[1] and the agreement entered into on May 29, 1889, between the gen-

---

[1] WABASH, St. LOUIS & PAC. RAILWAY.

SOLON HUMPHREYS and THOMAS E. TUTT, Receivers.

JAMES F. How, Gen. Agent for the Receivers.

St. Louis, Mo., Mch. 1st, 1886.

GENTLEMEN: As a question exists as to whether the parties interested in the bonds on the C., B. & St. L. Ry. (Omaha division of the Wabash) have any title to any of the equipment now in the possession of the receivers of the W., St. L. & Pac. Ry., and, if so, as to how much of it, I think the best arrangement that could be made would be for us to furnish such as you need on that line, and for you to keep an accurate account of the amount the Wabash road would be entitled to for the use of it. This, on the basis of $125 per month for locomotives, $3.00 a day for passenger cars, $1.50 a day for baggage cars and cabooses, where any such cars are definitely assigned to you, and on the basis of the usual mileage on freight cars and passenger cars when not regularly assigned to you; and that these reports are to be made to the receivers of this road monthly. It being understood that if, on the final adjudication of the question, which is to be brought without delay before the courts by the parties representing the bondholders of the C., B. & St. L. road, it is decided that they are not entitled to any, or only a portion, of the Wabash equipment which you have used, then you are to settle for any excess of such equipment as you may have used, on the basis of the reports above as agreed on. Yours, truly, JAMES F. How, Gen. Agt.

To Theodore Sheldon, Att'y U. S. Trust Co.
Thos. McKissock, Receiver C., B. & St. L. Ry.

P. S. It is understood that above agreement refers, as regards the quantity of equipment, only to the average amount used on the road for the past three months. If more than that is used, same is to be paid for promptly at the end of each month, at the rates stated above.

eral managers of the Omaha and Wabash Companies, were undoubtedly composed with a full knowledge of the existence of the rule or usage in question, and they should be interpreted—particularly the letter of March 1, 1886—in the light of that usage.)   It admits of no doubt, I think, that when the letter was written, and the proposition it contained was accepted, it was the mutual understanding of both parties that the receiver of the Omaha Company should keep the cars and engines assigned to him in an ordinary state of repair at the expense of his trust, and that the receivers of the Wabash Company should do likewise with the equipment claimed by the Omaha Company which the Wabash receivers were to retain until the settlement of pending litigation.   In short, the court holds that, considering the nature of the thing hired, and the usages which prevail among railroads, no obligation rests upon the Omaha Company to pay the bills for repairs which figure as an offset in this case, even though all of the expenditures were incurred in repairing the effects of ordinary wear and tear.   It is suggested by the Wabash Company that the rental charged for equipment is excessive, considering the fact that the loan of the equipment in question was not a temporary loan, or an ordinary interchange of rolling stock, such as usually occurs among railroads.   The answer is that the prices charged and allowed by the master, are such as the receivers of the Wabash Company themselves proposed in March, 1886, and the general managers approved on May 29, 1889.

Finally, the application made by the Wabash Company to amend its answer and to interpose a new and additional set-off to intervener's claim, which was not presented to the master, must be denied, both for the reason that the application is made too late, and because the proposed set-off forms the subject-matter of a cross bill which was filed in 1886 against the intervener's predecessor in interest in the United States circuit court for the southern district of Iowa.   The cross bill appears to be still pending and undetermined, and the merits of the claim can as well be adjudicated in the court where it was first filed.   The result is that the intervener's exceptions Nos. 1 to 7 (both inclusive) will be sustained. Its eighth and ninth exceptions are overruled.   Defendant's exceptions are also overruled.   The order of allowance recommended by the master will be entered, but the amount of the allowance will be $83,613.43, with interest, instead of $43,006.06, as recommended.