[No. 11750.  Department One.  November 27, 1914.]

GERMAN-AMERICAN BANK OF SEATTLE, *Appellant*, v.

S. NORMILE, *Respondent*.[1]

BAILMENT—FOR HIRE—RESPONSIBILITY FOR REPAIRS.  At common law, in the absence of express contract, a bailor for hire of a steam grading outfit is responsible for extraordinary repairs which inure to his benefit not caused through the fault of the bailee; the bailee is responsible for expenses ordinary and incidental to its use; and responsibility for ordinary expenses incident to keeping it in repair, depends to a considerable extent upon the recompense, custom, and usage, and nature of the article.

SAME — FOR HIRE — RESPONSIBILITY FOR CONDITION — CUSTOM. Where, at the time a steam grading outfit was leased, it was not in good repair, in the absence of an express contract, it was the duty of the bailor to put it in good condition, where there was proof of a custom to that effect.

SAME—FOR HIRE—EXTRAORDINARY REPAIRS—RESPONSIBILITY—CUS-TOM.  Where a steam grading outfit was leased without an express agreement as to repairs, general proof of a custom that the bailee must keep up the repairs, there being some proof that he must pay only for the ordinary repairs, is not sufficient to render the bailee responsible for extraordinary repairs occasioned without his fault or neglect and which inure to the benefit of the bailor on termination of the bailment.

[1]Reported in 144 Pac. 289.

SAME—ORDINARY REPAIRS—ORDINARY AGREEMENT. In such a case, considering the subject-matter of the bailment, worth $15,000, and the agreed recompense, $50 per day, there is no implied intention that the bailor should pay for repairs incident to the use of the outfit, the bailee being chargeable with the expense of ordinary repairs.

Appeal from a judgment of the superior court for King county, Humphries, J., entered June 18, 1913, upon findings in favor of the defendant, in an action on contract, tried to the court. Reversed.

*Edwin H. Flick, C. E. Hughes,* and *D. R. Hoppe,* for appellant.

*Gill, Hoyt & Frye,* for respondent.

MAIN, J.—The purpose of this action was to recover upon a contract of bailment for hire. In the case here presented, there are but two parties, the German-American Bank, a corporation, the plaintiff and appellant, and S. Normile, defendant and respondent. Originally there were other parties defendant, but as these are not before the court no reference will be made to them.

By the complaint, a balance was claimed to be due upon the bailment contract. The defendant interposed a counterclaim. The cause was tried to the court without a jury. Judgment was rendered upon the counterclaim in favor of the defendant in the sum of $117.32. The plaintiff appeals.

The facts are substantially as follows: On July 27, 1912, one J. B. Keating, being then the owner of a certain grading outfit, consisting of a steam shovel and a number of dump cars, a quantity of railroad trackage in place, and two engines, leased the same to S. Normile. The contract of leasing or bailment was oral, and provided that the bailee should pay, as compensation therefor, the sum of $50 per day. The value of the outfit was approximately $16,000. There was no mention in this contract as to which party (a) should pay the cost of putting the outfit in good condition; (b) should be responsible for the ordinary repairs incident

to the use to which the outfit was to be put, or (c) should be chargeable with the extraordinary repairs which went to increase the value of the subject-matter of the bailment and inured to the benefit of the bailor.

The outfit was used by the bailee for a period of 121 days. Payments for the use of the outfit were made from time to time. The plaintiff claims that there was a balance due in the sum of $1,851.71. The defendant claims that, upon his counterclaim, he is entitled to a credit of this sum on account of moneys expended for repairs, and in addition to this the sum of $117.32 as an overpayment. The rights of Keating under the contract had been assigned to the appellant.

The trial court found that the grading outfit was not in good condition at the time the contract was made. The plaintiff claims that, in the absence of an express term in the contract, by custom, the bailee is chargeable with all of the repairs. The defendant claims that, by custom, the bailor must meet the expenditures for repairs.

The question in this case is whether the bailor or the bailee, in the absence of an express contract, must meet the expenses incident to putting the subject-matter of the bailment in good repair, and keeping up the repairs incidental to its use. This general question may be divided into three subordinate questions, as follows: First, Upon which party should fall the duty of meeting the cost of putting the thing bailed in a reasonably good condition; second, Should the bailor or the bailee be chargeable with the ordinary expenses incident to the use; and third, Which party should be liable for extraordinary repairs which are caused without the neglect or fault of the bailee and which inure to the benefit of the bailor?

Upon the general or subordinate questions there are few if any adjudicated cases which are directly in point. A number of text writers, however, have stated a rule. The writers of texts usually preface their statement as to the rule with

the declaration that the "common law upon this point is still unsettled," or make use of language of like import.

In Edwards on Bailments, § 385, the author states the rule thus:

"The time for which chattels are hired, and the use to which they are to be applied, will generally indicate the understanding of the parties in respect to expenses and ordinary repairs. On this point the provisions of the civil code are quite specific and minute; while under the common law the liabilities of a bailee in this particular do not appear to be very accurately defined. When horses or other domestic animals are hired, for a journey, or for a length of time, the natural inference is that the hirer assumes the ordinary expenses of feeding and keeping them in good condition. A like inference can hardly be made under a hiring of inanimate chattels, so as to charge the hirer with the expenses of keeping them in repair. And it is quite well settled, that the hirer of horses, cattle, or carriages is not liable for unusual and extraordinary expenses, that become necessary for the use or the preservation of the property; as where a horse falls lame or sick on a journey, or where a carriage is broken down, or where a barge is sunken or crushed by the ice, without any fault on the part of the hirer."

In 3 Am. & Eng. Ency. Law (2d ed.), p. 761, it is said:

"For what expenses incurred by a bailee, about the thing bailed, the bailor is bound to reimburse him, depends upon the character of the bailment and the nature of the expense. . . . A bailee for hire, where the use of the thing bailed is the essence of the contract, impliedly undertakes to keep the thing in repair, and must bear such expenses as are incident thereto, unless the necessity for them arises from some defect in the thing against which the bailor has expressly or impliedly warranted it. Extraordinary expenses are charges upon the bailor, and the bailee, it seems, may compel reimbursement for them."

In Hale on Bailments and Carriers, p. 200, the rule is stated thus:

"The common-law doctrine upon this point is still unsettled. The express or presumed intention must govern;

and, as bearing upon this point, the bailment purpose, and the rate and nature of the recompense, must be considered. It would seem a fair presumption that the parties intended the bailor to bear any unforeseen and extraordinary expense, which permanently enhances the value of the property, or wholly preserves it from loss, provided the expense was not necessitated by the bailee's fault. It seems equally reasonable that the bailee should bear the ordinary and incidental expenses of caring for the property. . . ."

To substantially the same effect, are, also, 7 Am. & Eng. Ency. Law (2d ed.), p. 307; *Central Trust Co. v. Wabash, St. L. & P. R. Co.*, 50 Fed. 857; *Leach v. French*, 69 Me. 389, 31 Am. Rep. 296; *Sims & Smith v. Chance*, 7 Tex. 561; 3 R. C. L., p. 137, § 60.

The authorities, so far as they speak upon this question, are in substantial accord in support of the rule that, at common law, in the absence of an express contract, the bailor is responsible for extraordinary repairs which inure to his benefit and which were not caused through the neglect or fault of the bailee; and that the bailee should bear the expenses ordinary and incidental to the use of the thing bailed. This rule seems to be founded in sense and reason. In the absence of an express term in the contract covering the question, whether the bailor or the bailee is bound to pay the ordinary expenses incident to keeping the article hired in a state of repair, depends to a considerable extent upon the rate and nature of the recompense, custom, usage, and the character of the article. 5 Cyc. 176; Schouler, Bailments and Carriers (3d ed.), § 152.

In the present case, the trial court found that the grading outfit was not in good repair at the time of the leasing. It is contended that this finding is without substantial support in the evidence. Without discussing the evidence in detail, after reading the record, we are of the opinion that the trial court's finding upon this question should not be disturbed.

The trial court made no finding, as already indicated, upon the subject of custom. The evidence sustains the contention

of the respondent that it was customary for the bailor to put the grading outfit in good condition at the time of the leasing. This the appellant does not dispute. From this custom, in the absence of an express contract, it follows that the bailor was chargeable with that portion of the expense which was necessary to put the outfit in good condition.

The plaintiff claims that it has proved that, by custom, the bailee is chargeable with the repairs. It is true that there is evidence in the record to the effect that the bailee must meet the expenses for repairs. Much of this evidence is general "that the lessee keeps up the repairs." There is some evidence that the bailee must pay only for the ordinary repairs. We think this evidence not sufficient to impose upon the bailee liability for extraordinary repairs which are occasioned without his fault or neglect, and which inure to the benefit of the bailor and make the thing bailed more valuable to him when it is returned. The rate of the recompense provided by the contract, when taken into consideration with the subject-matter of the bailment, is not sufficient to show an implied intention of the parties that the bailor should bear the expense incident to the use of the thing bailed. Under the rule stated, the bailee is chargeable with the expense for ordinary repairs.

From the evidence in the record we are unable to determine what portion of the $1,851.71 claimed to be paid for repairs was expended, (a) in putting the outfit in good condition, (b) in paying for extraordinary repairs, and (c) for the ordinary repairs. For the purpose of determining what portion of the total sum expended for repairs should fall upon the bailor and what portion upon the bailee, it will be necessary that further evidence be taken.

The judgment will be reversed and the cause remanded for further proceedings in accordance with the views above expressed.

CROW, C. J., ELLIS, GOSE, and CHADWICK, JJ., concur.