[No. 13627.   Department Two.   May 9, 1917.]

ANDREW PETERSON, *Plaintiff and Appellant*, v. JAHN
CONTRACTING COMPANY *et al., Defendants and
Appellants.*[1]

BAILMENT—CONTRACT OF HIRE—CONSTRUCTION.   In a contract for the rental of road construction equipment, the lessee cannot recover for a shortage of 4,000 feet of pipe and 1,000 feet of rails, described in the contract as "approximately" for 1 mile of railroad and 2 miles of pipe line, "now left upon the ground, as it was seen and inspected by the parties."

ACCORD AND SATISFACTION—PART PAYMENT—ACCEPTANCE.   Where payments were tendered to a bank, acting as agent for the creditor, in full satisfaction of the claim, and the bank refused to accept them as payments in full, except subject to the approval of the creditor, who refused to approve, there was no recognition of the payments as payments in full, and the creditor is not estopped from recovering the balance notwithstanding there was no offer to return the payments, which the bank had credited upon an indebtedness due it; since the debtor could have refused to make the payments except upon condition.

[1] Reported in 164 Pac. 937.

BAILMENT—CONTRACT—FRAUD—INSPECTION. A contract for hiring road construction equipment cannot be avoided for fraud in misrepresenting the condition of the equipment, where the lessee inspected it and the contract plainly indicates that he was to take it as it stood, regardless of condition.

CONSTITUTIONAL LAW — OBLIGATION OF CONTRACT—BONDS — ATTORNEY'S FEES. The act providing, in actions upon surety bonds, for the allowance of attorney's fees in addition to all other costs, cannot apply to bonds executed prior to the passing of the act, since as to existing contracts, it is an additional burden without the power of the legislature to impose.

Cross-appeals from a judgment of the superior court for King county, Smith, J., entered December 13, 1915, upon findings in favor of the plaintiff, in an action on contract, tried to the court. Affirmed.

*John W. Roberts* and *George L. Spirk*, for plaintiff.

*Raymond G. Wright*, for defendants.

FULLERTON, J.—The defendant Jahn Contracting Company entered into a contract with King county for the construction of a public road known as Highway 3 C. Needing certain equipment to prosecute this work, the company, on July 6, 1914, leased the same from the plaintiff, Peterson, agreeing to pay as rental therefor the sum of $3,200, at the following times: $750 on or before August 20, 1914; $750 on or before September 20, 1914; $750 on or before October 20, 1914; $750 on or before November 20, 1914, and $200 on completion of the highway. It was provided in the contract that the Jahn Contracting Company, during the time it used the equipment, should keep it in the same good repair it was in when it received it, ordinary wear and tear excepted, and also that it was "understood and agreed that party of the second part [Jahn Contracting Company] is to take the entire equipment that was used by the party of the first part in building and constructing the North Trunk road, which is now left upon the ground, as it was seen and inspected by the parties hereto on the 5th day of July, 1914." The defendant

New England Casualty Company was the surety on the bond required by statute for the contract between the Jahn company and King county. The contracting company made the first four payments at the times mentioned in the contract to the Scandinavian-American Bank, which bank the plaintiff had authorized to receive the payments, less certain deductions from the full contract price on account of certain expenses it incurred in putting the equipment in working order. The plaintiff, Peterson, instituted this action against the contracting company and its surety to recover the difference between the amount paid by it to the bank and the amount of rental called for in the contract, together with certain damages he alleged he sustained by reason of the defective condition the equipment was in when returned to him. In their answer, the defendants claimed that the payments made by the contracting company to the bank were made in full settlement of their indebtedness to plaintiff, and also claimed damages for indebtedness incurred by reason of alleged defects and deficiencies in the equipment when received by the contracting company. A judgment in the sum of $1,306.71 was entered in favor of the plaintiff, from which both parties appeal.

The contract, after enumerating somewhat definitely certain parts of the equipment leased, mentioned "rails, joints, fish plates and bolts for approximately one mile of 24 inch gauge railroad," and for "two miles approximately of pipe." The rails were afterwards found to lack 1,092 feet of one mile, and the pipe 3,952 feet of two miles. The defendants, on their appeal, first contend that the court erred in not allowing them for the shortage in rails and pipe. But we cannot think the contract, properly construed, calls for any precise number of feet of rails or pipe. It recites that the property was seen and inspected by the lessee, and uses the word "approximately" in describing the distance they would reach. It is not disputed that the lessee got all of the rails and pipe that were upon the ground. We think it clear that this is

all it was to receive, and that there was no warranty of any particular length.

The defendants next contend that the payments made to the bank were tendered and accepted in full settlement of the rentals due on the contract at the time they were made, and that the trial court erred in holding them to be but partial payments. It appeared that Peterson was indebted to the bank at the time the contract was entered into, and left the contract with it so that payments made thereon might be applied by the bank toward the satisfaction of his obligation. The bank accepted these payments and gave Peterson credit for the same, but it distinctly refused to accept them as payments in full of the amount due, telling the defendant that it had no authority so to do, and that it would accept them only subject to the plaintiff's ratification and approval. When the matter was brought to the plaintiff's attention, he notified the defendant, through the bank, that he would not recognize the payments as payments in full. He did not, however, tender a return of the money, and it is on this fact that the defendant largely bases its claim that the payments were accepted as tendered. But the conclusion does not follow. The defendant was dealing with the plaintiff's agent. When the agent refused to accept the payments on the conditions tendered, it was the defendant's duty to act. It could refuse to make the payments at all or it could pay on the conditions the agent was willing to accept them. Having taken the latter course, it cannot now be heard to say the payments were made on any other condition. The plaintiff is not, therefore, estopped from recovering such balance as is found to be due and unpaid.

During the progress of the trial, the defendant offered evidence tending to show fraudulent representations made by the plaintiff concerning the condition of the equipment and the amount of the expense it was put to in repairing it, as an offset to the plaintiff's claim. The trial court excluded the evidence, and the defendant complains of its action in so do-

ing, contending that evidence of fraud is always admissible even though it may vary the terms of a written contract. While this no doubt is the general rule, a different rule obtains where there is an inspection of the property, or an opportunity to inspect, and the party charging the misrepresentation has every opportunity to judge for himself. The rule is well expressed in *Meyer v. Maxey*, 92 Wash. 73, 158 Pac. 995, where the court said:

"Even assuming that every representation charged by respondents had been made by appellant, it is manifest that the case falls within the rule announced by Pomeroy and reiterated in many of our decisions to the effect that, where the party charging misrepresentation institutes inquiry for himself, has recourse to the proper means of obtaining information and actually learns the real facts, or could have done so by availing himself of the means of information at hand, he cannot claim that he did not learn the truth and was misled by the representations. 2 Pomeroy, Equity Jurisprudence (2d ed.), § 893; *Wilson v. Mills*, 91 Wash. 71, 157 Pac. 467; *Stewart v. Larkin*, 74 Wash. 681, 134 Pac. 186, L. R. A. 1916B 1069; *Conta v. Corgiat*, 74 Wash. 28, 132 Pac. 746; *Shores v. Hutchinson*, 69 Wash. 329, 125 Pac. 142; *Van Horn v. O'Connor*, 42 Wash. 513, 85 Pac. 260. While we have gone as far as any court in relieving against inducing fraud and artifice, we have never gone so far as to relieve a purchaser of all responsibility for a failure to observe facts and conditions as much within his reach as that of the seller."

More than this, we think the contract itself plainly indicates that the lessee was to take the property as it stood, regardless of its condition. No error was committed, therefore, by the rejection of the proffered evidence.

The rental contract provided for thirty dump cars and the "optional use of six additional 24-inch gauge cars if needed." It appears that the defendant procured only twenty-nine cars. The court accordingly allowed the offset for the additional car. The defendant claims that it should have been allowed an offset for six additional cars, and that it made a demand

in due time for their delivery.   But we think the trial court rightly found with the plaintiff on this issue.   The evidence on the point was conflicting and we cannot say that it preponderates against the court's conclusion.

In his cross-appeal, Peterson maintains that his claim for damages to the mixer caused by the use of dynamite therein by defendants should have been allowed.   While the trial court seemed to think that such damage actually occurred, it was also of the opinion that the damage was offset by counterclaim of the defendants relating to the same article.   It would serve no purpose to set forth the evidence on the point. We find no error in the court's conclusion.

The plaintiff claims that he should be allowed an attorney fee as against the casualty company.   At the time the bond was executed, no such attorney fee was provided for by statute, but subsequent thereto and before the trial of the cause, a statute was enacted by the legislature allowing an attorney's fee in such cases.   The act provides for an allowance of an attorney's fee "in addition to all other costs."   Plaintiff's conclusion is that such an attorney fee is a part of the costs, that the act only affects the remedy, and that the general rule is that the rights and liabilities of parties in regard to costs depend upon the law in force at the time of the determination of the controversy, not at the time when the contract is entered into.   But whatever this attorney fee be termed—costs or something else—it is an attempt to place a substantial liability on the bonding company which it did not contract to assume.   It may be questioned whether the legislature intended the act to operate upon existing contracts, but whether it did so or not, it is such an additional burden as to existing contracts as to be beyond the power of the legislature to impose.

The judgment is affirmed.

MORRIS, MOUNT, PARKER, and HOLCOMB, JJ., concur.