[Civil No. 2933. Filed June 16, 1931.]

[300 Pac. 183.]

SCHMIDT–HITCHCOCK CONTRACTORS, a Corporation, Appellant, v. CHARLES H. DUNNING, Appellee.

Messrs. Baker & Whitney, for Appellant.

Mr. Luther P. Spalding and Mr. Floyd M. Stahl, for Appellee.

McALISTER, C. J.—This is an action by Schmidt-Hitchcock Contractors, a corporation, against Charles H. Dunning in which it seeks to recover $1,180 as rental for an Ingersoll-Rand portable compressor and

$1,000 as damages for injuries thereto as a result of defendant's alleged failure to take proper care of it while in his possession. From a judgment in its favor for $399.51 rendered upon the verdict of a jury the plaintiff appeals.

It appears from the complaint that the defendant hired the compressor from the plaintiff for the period, April 30, 1927, to November 27, 1928; that he promised to pay therefor $150 per month, or a total of $2,680, and that only $1,500 of this sum had ever been paid though demand for the balance, $1,180, had been frequently made. It is alleged further that the value of the compressor when hired by defendant was $2,500 but that it so deteriorated while in his possession that plaintiff was damaged in the sum of $1,000, a result brought about by the fact that defendant took so little care of it that its crank-case and water pump were broken, its motor jacket cracked and other parts of it injured beyond reasonable wear and tear.

The answer denies specifically each allegation of the complaint and alleges that defendant rented the compressor to be used only from November 4, 1926, to December 31, 1926, for $250 per month, but that he found the latter part of December he would have need for it from the last day of that month to May 1, 1927, and upon plaintiff's being advised of this it agreed to reduce the rental to $150 per month for these four months; that by reason of still further need for it the defendant continued in its possession to November 28, 1928, without any express agreement as to the rental charge therefor; that during this entire period defendant paid plaintiff as rental $225 for part of November, 1926, $150 for December, 1926, and the further sum of $2,150, or a total of $2,625, a sum in excess of the agreed and reasonable value of the rental for this period.

The answer avers further that at the time of hiring, the compressor was old, worn, used and of a value not in excess of $1,750; that while in his possession, due to this condition, it repeatedly broke down and became incapable of use without any fault on his part; that by reason of these break-downs and the constant delay in repairing the same it was not fit for or capable of use for three and one-half months but that plaintiff, though often asked to do so, made no credit allowance or deduction whatsoever therefor; that by reason of its old, worn and used condition and the break-downs resulting therefrom he was compelled to and did furnish labor to repair it and did purchase and install parts therein at his cost, all to his damage in a sum exceeding $1,000, and that no part of this has been paid or credited to defendant though often demanded; that by reason of these facts defendant denies that he is indebted to plaintiff in any sum whatsoever.

It appears from the testimony of defendant that he called at the office of plaintiff the latter part of October, 1926, and asked the person in charge if plaintiff had a compressor to rent and was advised by him to get in touch with Mr. Schmidt. He did so later that day by 'phone and was told that plaintiff had several compressors out but that one of them would be in from the Mt. Pleasant Dam in a few days and that when it came in the plaintiff would be glad to rent it to him. Some days later he called and was told that it had been returned but that it was in such bad shape it could not be sent out without being overhauled, which would take several days. Mr. Schmidt thereupon inquired of defendant if he could wait and he replied that he could and asked what the price would be. After learning that he only wanted it for a short time, or until about January, 1927, Mr. Schmidt told him it ought to be worth $250 a month and he agreed to take it at this price. Several times during the next

few days defendant called back at the office to find out if it was ready and finally, on November 4, 1926, it was, and he sent a truck to take it out. It appears further from his testimony that he told Mr. Schmidt at the time that he was going to use the machine at the Buckeye Mine, fifty-six miles west of Phoenix, and advised him fully as to the character of the work he wanted it to perform there.

Early in December and after he had used it for a month he informed Mr. Schmidt that he would need it until some time in April and that, in view of this longer period of use, he thought the rental ought to be lowered. Mr. Schmidt told him that he would advise him later and did so by sending a bill for the second month, December, for $150 instead of $250, and from then on all statements were for $150. On July 15, 1927, after the machine had been used by defendant for eight months at the Buckeye Mine, he moved it to the Copper Basin Mine near Prescott, Arizona, and there continued to use it until November 28, 1928, when he returned it to plaintiff in Phoenix.

During the nearly twenty-five months it was in his possession he made various repairs on it, which he claims were extraordinary, and at the trial was permitted over the objection of plaintiff to introduce evidence showing the nature of these repairs and the amount expended therefor, $650.49, and the number of days the compressor was shut down to make them, 64½, which he said entitled him to an additional credit of $330. It appears, however, that he made no complaint regarding the condition of the compressor nor any suggestion that plaintiff make the repairs or that he be reimbursed for any portion of them until August 7, 1928, after he had been using the compressor for twenty-one months and that he then merely asked for "some adjustment on the rental." In this state of the evidence the jury was instructed that it could allow a set-off for the two items claimed

to the extent of their total, $980.49, but not in excess thereof, provided it found that the compressor had been shut down and the repairs made as claimed and that there did not then prevail in the trade or business of leasing or renting machinery in the community in which the contract was made a custom whereby the bailee bears the expense of such extraordinary repairs, and it is apparent that a portion of this, $780.49, was allowed by the jury because this is the difference between $1,180, the amount plaintiff was seeking to recover as rental and which defendant admitted on cross-examination was correct if he were not entitled to a set-off, and $399.51 which the jury said by its verdict was due by him.

The plaintiff contends that a set-off was not allowable under either the pleadings or proof and its appeal is based on this proposition. The first two assignments challenge the ruling permitting the introduction over its objection of evidence bearing on this question. The defendant, it says, was allowed to introduce proof of warranties, express and implied, regarding the condition of the compressor, when none had been alleged, and of the cost of repairs thereon. The answer does not, it is true, contain an allegation of express warranty, but the record fails to disclose that such proof was offered except that the secretary-treasurer of the plaintiff-corporation did testify on cross-examination without objection that he promised defendant the compressor would be overhauled and put in good condition before it was turned over to him and that this was done.

The defendant contends that it was not necessary for him to allege or prove an express warranty because he fully informed plaintiff when the agreement was entered into what the compressor was to be used for, and this having been done the obligation to deliver it in such shape that it would be serviceable for that purpose and to maintain it as against repairs and

loss of use resulting from a defective and worn condition not due to any fault on his part was thereby imposed by law. It is true that a person who hires or leases out a chattel to be used for a particular purpose impliedly warrants that it is reasonably fit therefor and equally so that "in the absence of statute or express contract, a bailor is responsible for extraordinary repairs which inure to his benefit, and which were not caused through the fault or neglect of the bailee." 6 C. J. 1113; *German-American Bank of Seattle* v. *Normile,* 82 Wash. 368, 144 Pac. 289; Edwards on Bailments, par. 385; Hale on Bailments and Carriers, p. 200.

Neither of these rules apply, however, where the bailee has inspected the chattel or had the opportunity to do so; at least in those instances in which no reference is made in the agreement to the specific use to which it is to be put (*Builders' Brick & Supply Co.* v. *Walsh Transp. Co.,* 106 Misc. Rep. 460, 174 N. Y. Supp. 690; *Peterson* v. *Jahn Contracting Co.,* 96 Wash. 210, 164 Pac. 937; *E. L. Garrettson & Co.* v. *Rinehart & Dennis Co.,* 75 W. Va. 700, 84 S. E. 929), though where a lessee asks for an article of a certain kind, one capable of doing a certain class of work or accomplishing a given result, they do apply, because he is then contracting for the use rather than the particular article and is still relying on the lessor's judgment. *Builders' Brick & Supply Co.* v. *Walsh Transp. Co., supra.*

It is difficult to determine just which rule is applicable here because it is not clear from the evidence whether defendant hired the compressor without seeing it and hence relied upon the duty of the plaintiff to deliver it in serviceable condition, or whether he saw and inspected it, or had the opportunity to do so, and accepted it without a warranty. The evidence on the question is in conflict but the jury undoubtedly took the view that he relied on plaintiff's obligation to

deliver it in good condition and to pay for the repairs, which it was considered were extraordinary, since there is no question but that it was his duty as bailee to bear the expense of those which were ordinary and incidental to the use of the compressor. 6 C. J. 1113.

In deciding, however, whether evidence of a warranty and consequently of the cost of repairs should have been received these considerations should have been kept in mind: That the compressor was hired originally for two months or thereabouts; that any warranty, express or implied, that it was in good, serviceable condition for the work defendant wanted it to perform was intended to apply to that period; that when he sought from plaintiff early in December, 1926, permission to use it for four months longer than the original letting, or until April 30th, he was as well or perhaps better acquainted with its condition and performance than the owner, because he had then been using it for a month, and during this time the opportunity and in fact the duty of daily inspection, if necessary, was his; and that he engaged it for this additional time without anything's being said or done relative to the continuance of the original two months' warranty or the making of a new one.

It occurs to us that under these facts, coupled with the further ones that he succeeded in having the rental reduced from $250 to $150 per month and that the compressor was used machinery that likely did not justify a long-time warranty, the only reasonable inference to be drawn is that in seeking and securing an extension of his lease the defendant was relying on his own judgment as to its condition and serviceability and not upon the continuation of a two months' warranty made thirty days prior thereto, whether expressed or implied in the first instance. Any substantial extension of the rental period procured by the lessee of a machine after he has by using it become thoroughly familiar with its condition and serviceabil-

ity without specially providing for a continuation of any warranty theretofore existing or for a new one should be treated as made upon his own judgment, because he thereby places himself in the situation of the lessee who rents a designated article after seeing and inspecting it. Defendant's opportunity to gain that degree of knowledge of the compressor, which the law presumes the lessee of an article has before it places upon him the responsibility of acting on his own judgment as to its condition or fitness for his purpose, was far better than in many of the cases in which the rule is applied. For instance, a subcontractor, who was seeking to recover for repairs made on a masonry plant leased to him by his contractor, spent a day on the work while the plant was in operation and inspected it, and the court, in holding that the contractor was not liable for the repairs, since the contract neither guaranteed the fitness or the suitability of the machinery nor obligated him to put the same in repair, said in *Garrettson & Co.* v. *Rinehart & Dennis Co., supra:*

"It appears from the oral testimony that Garrettson had spent a day on the work and inspected the machinery, some of which was then running so he could see whether it was sufficient or not. Having done so, he knew exactly what he was getting. Under such circumstances, there is no implied warranty."

The original and the second or extended contract, which concerned the use of the compressor at the Buckeye Mine, having expired, the defendant moved it to a mine near Prescott on July 15, 1927, and there used it for seventeen months. This was the second extension of the contract and it was procured by the defendant after he had used the compressor eight months and without any complaint as to its condition or any reference whatever to the old or a new warranty. And since the extension procured by him with the knowledge gained from a thirty days' use of the

compressor had the effect of placing him in the position of relying upon his own judgment as to its condition, it follows necessarily that an extension secured with knowledge based upon an eight months' use of it must be regarded in the same light. In fact, it seems so plain that an original warranty of a used compressor for a period of two months cannot, except by express understanding, be held to accompany two successive extensions of the contract—one for six and the other for seventeen months—that the mere statement of the proposition is its own proof.

The defendant evidently did not feel that it was plaintiff's duty to make these repairs because he used the compressor for twenty-one months and made those required up to that time without requesting it to take care of them or giving it an opportunity to do so, and even then he did not take the position that they were its obligation but merely requested "some adjustment on the rental." He was under no obligation from April 30, 1927, to continue to use the compressor, because his contract from that time on at least was for no specific period and he was then and from the date of the first extension had been fully informed as to its condition. If he did not in this situation care to assume responsibility for repairs that might become necessary he could and should have returned it to the owner. *Ward* v. *Bruce,* (Tex. Civ. App.) 290 S. W. 887.

It follows that there was no warranty as to the condition of the compressor, at least from January 1, 1927, and hence no obligation on the part of plaintiff to make repairs, whether ordinary or extraordinary. It was error, therefore, to admit evidence of their cost as well as to deny the motion of plaintiff, which ruling forms the basis of the third assignment, to instruct the jury that it could not allow them as a set-off. This renders a consideration of the other assignments unnecessary.

369

The judgment is reversed and the cause remanded, with direction that any proceedings hereafter had be in conformity with these views.

ROSS and LOCKWOOD, JJ., concur.