251 P.2d 647

**MARCOS v. TEXAS CO.**

No. 5564.

Supreme Court of Arizona.

Dec. 15, 1952.

Rehearing Denied Jan. 13, 1953.

46

Udall & Udall, Tucson, for appellant.

Knapp, Boyle, Bilby & Thompson, Tucson, for appellee.

PATTERSON, Superior Court Judge.

This is an appeal from a directed verdict and judgment rendered against appellant by the lower court.

In 1942 The Texas Company, appellee, entered into a lease with one Ivins, pertaining to the service station property hereinafter mentioned, wherein Ivins was landlord and the company, tenant. This property consisted of realty particularly described in the lease, and other property described as follows:

"One service station building with plumbing installation and electrical wiring.

"One automobile hoist."

The Texas Company installed, on the premises, certain equipment required for the operation of the service station, including the gasoline tanks involved in this action but reserved in its lease with Ivins the right to sever and remove such equipment at any time.

Appellant, Paul Marcos, leased this service station and certain equipment from the Texas Company on August 1, 1948. Appellant had worked on the leased premises for about three months prior to his obtaining the lease. After taking possession, under his lease, Marcos kept a daily account of gasoline delivered by appellee and all gasoline sold to customers. Appellant testified that in the month of September he tallied his sales records against the gasoline delivery invoices and discovered a discrepancy of some 7,000 gallons of gasoline. He immediately notified appellee, and its agent promptly tested the storage tanks and found that the tanks involved in this action were leaking. The lease between appellant and appellee provided that it was subject to all the terms and conditions of the original lease between appellee and Ivins.

Appellant instituted an action against the appellee to recover the price he had paid the company for the gasoline which was lost by leakage from the defective tanks. The complaint contained two counts; the first, predicated upon negligence, the second upon breach of warranty. During the trial the first count was abandoned.

Appellant contends that although the tanks were affixed to the realty at the time he entered into his lease with appellee, that by virtue of the terms of the lease they were considered as personalty. Also by reason of the tanks being classified as "personalty" and not "realty", appellant is entitled to rely upon the law of implied warranty pertaining to bailment of personalty; that is, there was an implied warranty on the part of appellee that the tanks were in proper condition for the purpose leased and were not defective.

The following legal principles are pertinent:

"As a general rule, parties as between themselves, may, in their deal-

ings with chattels annexed to, or used in connection with, real estate, fix on them whatever character, as realty or personalty, on which they may agree, such right being, in some jurisdictions, recognized by statute, and the law will enforce such understanding whenever the rights of third parties will not be prejudiced." 36 C.J.S., Fixtures, § 13. See also 12 Cal.Jur., 566.

"*Effect as rendering article personalty.* The cases are ordinarily to the effect that an article which is annexed by the tenant, subject to a stipulation granting him the right of removal, retains its chattel character, as long as the right of removal continues, as between the parties, although it may lose its chattel character, if so closely annexed as to become an integral part of the land." 36 C.J.S., Fixtures, § 15.

"In the absence of fraud or statutory provisions to the contrary, ordinarily there is no implied covenant on the part of the landlord that the premises are or will remain suitable for the purposes for which they are leased", 51 C.J.S., Landlord and Tenant, § 304, whereas with reference to chattels leased for a particular purpose, a warranty will be implied that the chattel is reasonably fit for the purpose for which it is leased or hired. Anno. 31 A.L.R. 540, 541; Hoisting Engine Sales Co. v. Hart, 237 N.Y. 30, 142 N.E. 342, 31 A.L.R. 536.

The real issue to determine in this case is whether or not appellant and appellee by their contract, agreed to classify the gasoline tanks involved in this case as personalty. The intent of the parties must be gathered from their agreement and any other material evidence having a bearing upon their intent.

It is of particular interest to note that in Paragraph designated 5, in the lease executed in 1942 from Ivins to the Texas Company they agree as follows:

"(5) Removal of property. Lessee shall have the right at any time during the continuance of this lease or within thirty (30) days after its termination *to sever and remove all buildings, and improvements, fixtures, equipment and other property owned by lessee or placed on said premises by lessee during the term of this or any previous lease, or any extension or renewal thereof.*" (Emphasis supplied.)

In construing this particular provision of the lease it is apparent that the parties to this agreement, by the right of removal provision, classified the tanks as personalty and they must be considered as such by the original lessor and lessee.

The lease from the Company to appellant, particularly describes the identical realty as described in the Ivins' lease and then, under separate designation, particularly itemizes each piece of equipment including two tanks.

Under Paragraph designated (12) in the lease, we find the following provision:

"(12) Lease held by Lessor. This lease is subject to terms and conditions of the lease, if any, between lessor and the owner or tenant of the demised premises, and also any extension, renewal, or new lease, on the demised premises." ·

■ It is apparent from the provisions in the lease agreement, referred to, that it was the intention of the parties under this lease, that the gasoline tanks should be considered personalty and should not become a part of the realty. No rights of third parties having intervened, we are compelled to reach the conclusion that this case must be governed by the law of implied warranty in so far as these gasoline tanks are concerned.

Appellee relies upon the principles enunciated in the case of Schmidt-Hitchcock Contractors v. Dunning, 38 Ariz. 360, 300 P. 183, and other authorities cited, which state the general principle that where the complaining party has had the opportunity of inspecting or has inspected the chattel before taking it, the law does not imply the obligation or warranty of reasonable fitness or capability of the chattel. 8 C.J.S., Bailments, § 25. In view of the fact that when this lease was executed these tanks were buried underground and were not available to inspection and nothing had theretofore occurred to direct appellant's attention to any defect, we must conclude that appellant did not have an opportunity to inspect these tanks and that he was not, under the facts, as disclosed by the record, required to make any tests or inspection but had the right to rely upon the law of implied warranty that they were fit to use for the purpose intended under the lease.

We conclude that it was the intent of the parties under these lease agreements, to consider these gasoline tanks as personalty, with right of removal, and that the law of implied warranty is applicable. The trial court erred in directing a verdict and rendering judgment for the appellee.

The judgment is reversed and the cause remanded for a new trial.

UDALL, C. J., and STANFORD and LA PRADE, JJ., concur.

PHELPS, J., being unable to take part in the case, the Honorable W. E. PATTERSON, Judge of the Superior Court of Yavapai County, participated in his stead in the determination of this appeal.

DE CONCINI, Justice (dissenting).

I believe the trial judge was correct in directing a verdict for the defendant for the reasons expressed by him.

It is inconceivable to me to excuse the plaintiff of his own shortcomings and make the defendant pay for it. Here was the plaintiff, an experienced service-station operator, who was in that business two

years prior to coming to Tucson. He worked at the station in question for three months before he took over the management. He began operating the station on August 1 and didn't discover the tanks were leaking until 45 days later. His own testimony showed he was selling between 200 and 300 gallons per day, and during that period he was losing over 150 gallons per day. To say, as the majority opinion does, that because the tanks were buried plaintiff didn't have a chance to inspect them, is in my opinion absurd. All he had to do, was to measure the gasoline in the tanks at night and again the next morning to learn if the tanks were leaking. The measuring is a simple operation of dropping a stick in the tank, which was available for that purpose at the station, and note the measurement thereon. Then upon the next measurement, provided no gas had been pumped from the tanks, the stick would show by the gas mark whether the contents lowered or held its mark. This operation takes two minutes at the most. I believe it was the duty of the plaintiff to make such an inspection, which he had the opportunity to do, within a reasonable time. A reasonable time would be two or three days and not some 7,200 gallons later. See Schmidt-Hitchcock Contractors v. Dunning, and 8 C.J.S., Bailments, § 25, as cited in the majority opinion. See also headnotes 2 and 3 in Gaffey v. Forgione & Romano Co., 126 Me. 220, 137 A. 218.

A lessor is liable for injuries caused by faulty equipment or the installation of

same *after notice*. Sinclair Refining Co. v. Reid, 60 Ga.App. 119, 3 S.E.2d 121. In the instant case, there was no notice.

The judgment of the lower court should be affirmed.