Herschel M. POINTER and James
Pointer, Plaintiffs,

v.

The AMERICAN OIL COMPANY,
Defendant.

No. IP 68–C–100.

United States District Court
S. D. Indiana,
Indianapolis Division.

Oct. 8, 1968.

Supplemental Entry Jan. 22, 1969.

Daniel J. Harrigan, of Bayliff, Harrigan & Cord, Kokomo, Ind., for plaintiffs.

Geoffrey Segar, of Ice, Miller, Donadio & Ryan, Indianapolis, Ind., for defendant.

STECKLER, Chief Judge.

This cause came before the Court on the defendant's motion to dismiss the complaint on the ground that the complaint fails to state a claim upon which relief can be granted.

The complaint alleges that the plaintiffs leased from the defendant a "Standard" service station in Kokomo, Indiana, a copy of the lease being attached to the complaint and made a part thereof. Plaintiffs allege that the defendant was responsible for the maintenance, repair and/or replacement of the underground bulk tanks used for storing gasoline for resale at the station. It is alleged that when the plaintiffs leased the station (April 5, 1966), plaintiffs were billed for gasoline based upon the meter on the retail gasoline pump; that consequently plaintiffs were required to pay defendant only for the gasoline which actually went through the retail pumps. The complaint alleges that on and after May 1, 1966, plaintiffs were billed for the gasoline based upon the meter on the tanker trucks, and thus were billed on the basis of the gasoline which went into the storage tanks rather than the gasoline which went through the retail pumps. They assert that the change in the billing, and hence the transfer of the risk of loss due to faulty storage tanks, was made by the defendant without their advice and consent. Plaintiffs allege that on and after May 1, 1966, they commenced to lose money and that they complained to defendant's agent that they believed the tanks were leaking. Plaintiffs allege that they were repeatedly assured by the defendant that the leased equipment was sound and that plaintiffs' losses must be due to some other cause. It is alleged that after fifteen months of continual and repeated demands, the defendant caused various tests to be conducted on or about August 1, 1967, at which time it was confirmed that the storage tanks were leaking. The complaint states that the defendant replaced the tanks on or about August 1, 1967.

Plaintiffs allege that between May 1, 1966 and August 1, 1967, they were billed for 123,417 gallons of premium gasoline and during said period they pumped 98,864 gallons of premium gasoline, for a net loss of 24,553 gallons. Further, they allege that between May 1, 1966 and August 1, 1967, they were billed for 193,055 gallons of regular gasoline, and during said period they pumped 135,351 gallons, for a net loss of 57,704 gallons. They allege that they were charged 35½ cents per gallon for the premium gasoline, and 32 cents per gallon for the regular gasoline, resulting in an alleged total loss to them in the amount of $27,181.60.

The defendant bases its motion to dismiss on the holding in Loper v. Standard Oil Company, Ind.App., 211 N.E.2d 797 (1965). That case involved a lease with the same "hold harmless clause" as is contained in the lease between the parties to this action. Defendant argues that the cause of action as alleged by

the plaintiff in the *Loper* case was almost identical to the cause of action alleged by the plaintiffs in this case, the only difference being that in the *Loper* case the lease involved a furnace, and in this case, "faulty storage tanks." The defendant points to the fact that the lease attached to the plaintiffs' complaint specifically lists the "underground tanks" as being within the lease provisions. In the *Loper* case it was also shown that at various times Standard (the sub-lessor) inspected the premises and made repairs at its own expense. In affirming the trial court's action sustaining the defendant's demurrer and judgment for the defendant, the Indiana Appellate Court ruled that the "hold harmless clause" indemnifying the landlord from liability for his own negligence was not against public policy.

In the *Loper* case, as in this case, the lessee agreed to keep the premises, buildings, and equipment, etc., in good order and repair. In that case Standard relied on the indemnification provision of the lease as a bar to the cause of action, the same as the defendant asserts in this action. In *Loper*, the Appellate Court agreed that such an indemnification provision was a bar to the action.

From the face of the complaint in the action before the court it is difficult to tell whether the plaintiffs rely on breach of an implied warranty that the tanks in question were reasonably fit for the purpose for which they were intended as a part of the lease, or whether they are relying on an action sounding in tort. In their brief the plaintiffs state:

"The instant case is not a casualty loss as such. It is based rather upon the implied agreement of the parties. It was understood from the outset that Standard Oil Company (sic) would replace or repair the permanent equipment located upon the demised premises."

The lease contains the following covenants:

"Lessee hereby covenants and agrees as follows:

1. That Lessee has examined and knows the condition of said premises and the buildings, equipment, machinery and appliances situated thereon, acknowledges that he has received the same in good order and repair (except as otherwise specified), and that no representations as to the condition or repair thereof have been made by Lessor or anyone representing Lessor.

2. That Lessee will pay all water, light and other operating expenses and will keep said premises, buildings, equipment, machinery and appliances, together with the adjoining sidewalks and entrance driveways in good order and repair; * * *

3. Lessor, its agents and employees shall not be liable for any loss, damage, injuries, or other casualty of whatsoever kind or by whomsoever caused, to the person or property of anyone (including Lessee) on or off the premises, arising out of or resulting from Lessee's use, possession or operation thereof, or from defects in the premises whether apparent or hidden, or from the installation, existence, use, maintenance, condition, repair, alteration, removal or replacement of any equipment thereon, whether due in whole or in part to negligent acts or omissions of Lessor, its agents or employees; and Lessee for himself, his heirs, executors, administrators, successors, and assigns, hereby agrees to indemnify and hold Lessor, its agents and employees, harmless from and against all claims, demands, liabilities, suits or actions (including all reasonable expenses and attorneys' fees incurred by or imposed on the Lessor in connection therewith) for such loss, damage, injury or other casualty. Lessee also agrees to pay all reasonable expenses and attorneys' fees incurred by Lessor in the event that Lessee shall default under the provisions of this paragraph.

*      *      *      *      *      *

13. That no obligation, agreement or understanding on the part of either

party to be performed shall be implied from any of the terms and provisions of this lease, all obligations, agreements and understandings being expressly set forth herein.

*  *  *  "

It is difficult to reconcile the language of the lease with the statement in the plaintiffs' brief, "It was understood from the outset that Standard Oil Company (sic) would replace or repair the permanent equipment located upon the demised premises."

■ On a motion to dismiss, all facts well pleaded must be accepted as true; the pleader is entitled to the most favorable inferences and intendments to be drawn from the facts pleaded. All doubts should be resolved in favor of the pleader, that is to say, the case should go to answer and proofs, and not be disposed of on a motion to dismiss where a doubtful question is raised by the complaint under attack. No matter how likely it may seem that the pleader will be unable to prove his case, he is entitled, upon averring a claim, to an opportunity to prove it. A complaint is not subject to dismissal unless it appears to a certainty that the plaintiff cannot possibly be entitled to relief under any set of facts which could be proved in support of its allegations.

■ The motion to dismiss for failure to state a claim upon which relief can be granted raises the issue of the sufficiency of the complaint to state a redressable claim. In other words, the motion raises the broad issue of the justiciability under pertinent rules of law of the asserted cause of action. More specifically, two issues are raised: (1) whether a claim is stated, and (2) whether relief can be granted thereon. Thus, the motion in such form raises issues as to the right to relief as well as to the existence of the claim.

Viewing the complaint in its most favorable light on the motion to dismiss, that part of the complaint which comes closest to alleging a redressable wrong, assuming that it is not subject to the

"hold harmless clause," is the allegation that the change in billing, and hence the transfer of the risk of loss due to faulty storage tanks, was made by the defendant without the plaintiffs' advice and consent. If this be the gravamen of the plaintiffs' complaint, it falls short of stating a justiciable claim. Nothing is *stated* in the complaint or in the lease that would indicate that the defendant had assumed the risk of loss due to faulty storage tanks. Nor is anything said in the complaint or in the lease to indicate that the defendant had obligated itself to continue to bill the plaintiffs for gasoline delivered to the service station for resale according to the meter readings on the retail gasoline pumps rather than on the readings shown by the meter on the tanker trucks.

Bearing in mind that the plaintiffs state in their brief in response to the defendant's motion to dismiss that the instant case is not a casualty loss as such, but is based upon an implied agreement or understanding of the parties from the outset that the defendant oil company would replace or repair the permanent equipment located upon the demised premises, the question is presented whether the "hold harmless clause" bears on the purported claim. On the other hand, if the plaintiffs are relying on an implied warranty of the suitability of the premises, equipment and appliances for the purposes for which they were leased, the plaintiffs are confronted with the first covenant in the lease. By that covenant they agreed that they had examined and knew the condition of the premises and the buildings, equipment, machinery, and appliances situated thereon, and they acknowledged that they received the same in good order and repair, and that no representations as to the condition or repair thereof had been made by the defendant lessor or anyone representing the lessor. Moreover, aside from the acknowledgment in the lease that the premises, equipment, and appliances were received in good order and repair, by the second covenant in the lease, the

plaintiffs agreed that they would keep the premises, equipment, and appliances in good order and repair.

The law in Indiana is that there is no implied warranty that leased premises are fit for the purposes for which they are let; that when an action is based on fraudulent concealment, a duty to disclose the truth must be shown; that the rule of caveat emptor applies in the relation of landlord and tenant unless material representations constituting fraud are specifically alleged, or there is a showing of fiduciary relationship between the parties. Anderson Drive-In Theatre v. Kirkpatrick, 123 Ind.App. 388, 110 N.E.2d 506 (1953). Cf. Tudor v. Heugel, 132 Ind. App. 579, 178 N.E.2d 442 (1961).

In another jurisdiction, Arizona, in a case strikingly similar to the case at hand, the Supreme Court of Arizona held that as between the parties, where gasoline tanks were given a chattel character, the gasoline tanks installed in the ground by the defendant oil company were personalty and not realty, and that the plaintiff was entitled to rely upon the law of implied warranty that the tanks were fit for the purpose intended under the lease. Marcos v. Texas Co., 75 Ariz. 45, 251 P. 2d 647 (1952). The real issue to be determined, the court concluded, was whether the parties by their contract agreed to classify the gasoline tanks involved as personalty. The intent of the parties, the court stated, had to be gathered from their agreement and any other material evidence having a bearing upon their intent. Id. at 649. In answer to the lessor's reliance upon the principle that where the complaining party has had the opportunity of inspecting or has inspected the chattel before taking it, the law does not imply the obligation or warranty of reasonable fitness or capability of the chattel, the court held that in view of the fact that when the lease was executed, the tanks were buried underground and were not available to inspection and nothing had theretofore occurred to direct the lessee's attention to any defect, the lessee did not have an opportunity to inspect the tanks and that he was not, under such circumstances, required to make any tests or inspection but had the right to rely upon the law of implied warranty that they were fit to use for the purpose intended under the lease. One judge dissented, however, on the ground that the lessee could have inspected the tanks by the use of a measuring stick and would then have discovered the leakage sooner.

It is the rule in Indiana, and it is well settled, that where a person hires or leases out a chattel which is to be used for a particular purpose, a warranty will be implied that the chattel is reasonably fit for the purpose for which it is leased or hired. Bass v. Cantor, 123 Ind. 444, 24 N.E. 147 (1890); 68 A.L. R.2d 850.

In the present case the gasoline tanks in question are listed and included among the buildings, fixtures, equipment, machinery, and appliances located on the premises described in the lease. Whether the parties intended to treat the fixtures, including the underground gasoline tanks, as a part of the realty, or as chattels to which would attach an implied warranty of fitness for the use for which they were leased, presents both questions of fact and questions of law. Helpful discussions in this regard are found in 51C C.J.S. Landlord and Tenant § 304, and 36A C.J.S. Fixtures §§ 1, 2, and 38.

By reason of the questions presented the Court will withhold ruling on the motion to dismiss and will direct that the matter be assigned for oral argument. In the meantime the parties shall have fifteen (15) days within which to file additional briefs in support of their legal positions on the motion to dismiss.

It is so ordered.

### SUPPLEMENTAL ENTRY

Subsequent to the Court's Entry of October 8, 1968, the plaintiffs filed an Amended Complaint in two Counts, and under Count II plaintiffs alleged that the defendants "impliedly warranted to

the plaintiffs that the underground bulk storage tanks used for storing gasoline for resale at said station were reasonably fit for the purpose and would not leak." Thereafter the defendant renewed its Motion To Dismiss and Brief in support thereof and asserted said Motion To Dismiss as to both Count I and Count II of the plaintiffs' Amended Complaint as filed.

Thereafter the Court set this matter for hearing and argument on defendant's Motion To Dismiss and the matter was presented to the Court on January 22, 1969.

The Court considered the plaintiffs' Amended Complaint in its entirety together with the defendant's Motion To Dismiss with respect thereto and in so doing reviewed the lease provisions as incorporated in the plaintiffs' Amended Complaint, and in particular regard the provisions which were hereinbefore set forth in the Court's Entry of October 8, 1968; and the Court also considered the arguments of counsel in arriving at the conclusion hereinafter set forth that the defendant's Motion To Dismiss should be sustained.

The Court recognizes that Motions To Dismiss for failure to state a claim on which relief can be granted must be cautiously sustained and must not deprive a plaintiff of a right to a trial on the basis of his pleadings, if one is indicated. However, the Court further recognizes that in considering the defendant's Motion To Dismiss, it must consider the allegations of the plaintiffs' Amended Complaint as true, including the lease agreement which is made a part of the plaintiffs' Amended Complaint. The legal effect of said lease is for the Court's determination.

In reviewing the lease agreement in conjunction with the entire pleadings in this matter, the Court considers that the lease provisions prohibit the plaintiffs from stating a claim on which relief can be granted in that said lease provisions apply whether plaintiffs' theory of law is based upon tort or implied warranty.

In view of the foregoing, the Court hereby sustains the defendant's Motion To Dismiss and it is ordered that judgment be entered for the defendant, The American Oil Company.