WILLIAM E. SKILLINGS *vs.* FRED B. COLLINS.
FRED B. COLLINS *vs.* WILLIAM E. SKILLINGS.

Suffolk.    March 27, 1916. — May 19, 1916.

Present: RUGG, C. J., LORING, BRALEY, DE COURCY, & PIERCE, JJ.

*Contract*, Rescission. *Sale*, Warranty. *Election. Automobile. Words,* "Offer."

In the provisions of the sales act relating to rescission for a breach of warranty contained in St. 1908, c. 237, § 69, cls. 3, 4, the word "offer" as used in relation to an offer to return the goods is synonymous with the word "tender."

Where the buyer of an automobile for the price of $3,000 paid for it with another automobile agreed to be worth $2,000, $500 in cash and $500 in notes, where

the seller gave an oral warranty that the $3,000 car was in perfect running order, which it was not, and where the buyer, after repeated trials of the car and repeated unsuccessful attempts of the seller to put it in order, wrote to the seller, "This is a formal notice to you that I shall not accept the Chadwick car — which is, as you know, now at [a certain garage, the place of repair.] . . . it has never once been in anything like proper condition. I am done with it absolutely, and I would not have it at any price," but thereafter the buyer did not offer to return or tender the car to the seller and demand the return of the consideration until one month and four days after the date of his letter, it was *held,* that the buyer by his failure to return the car or to offer to return it within a reasonable time after he had knowledge that the warranty was broken had lost his right to rescind the sale.

PIERCE, J. About the first of April, 1913, the plaintiff Skillings in exchange sold to the defendant Collins, acting through one Clapp, a Premier Roadster automobile for the agreed price of $2,000. *Howard* v. *Harris,* 8 Allen, 297, 299. *Carey* v. *Guillow,* 105 Mass. 18. *Commonwealth* v. *Abrams,* 150 Mass. 393. As a part of the same transaction, Clapp, acting for Collins, sold to Skillings a Chadwick automobile for the price of $3,000. Clapp received for the contract price $500 in cash, $500 in notes and $2,000 as the value and agreed price of the Premier Roadster automobile sold to Collins. The first of these actions is brought by Skillings to recover $3,000 upon a rescission of the contract. The second action is brought by Collins upon the notes.

The evidence warranted a finding that, before the sale and to induce the purchase, Clapp stated to Skillings that the car "was all right, that it was in perfect running order, that it had been thoroughly overhauled, that there were no defects in it and that there was nothing out about it;" that, during the negotiations and before the sale, Skillings said to Collins in the presence of Clapp, "that Clapp had stated that the car was in perfect running order, that there were no defects about it and that it was put perfectly and thoroughly in condition and overhauled;" and that Collins corroborated the statement.

The evidence warranted a finding that the car was out of repair, was not in perfect running order and had not been thoroughly overhauled at the time of the sale. "The defendant concedes that if the warranty alleged was proved . . . then the jury could have found a breach of it, that is, that the car was not in perfect condition."

The plaintiff Skillings alleges that he rescinded the contract, and seeks in this action a recovery of the price paid. To enable the plaintiff to recover back his purchase money, he must have notified the defendant within a reasonable time of his election to rescind and must have returned, or have offered to return, the automobile to the defendant in substantially as good condition as it was when transferred to him. St. 1908, c. 237, § 69, cl. 3. As was said by Shaw, C. J., in *Dorr* v. *Fisher,* 1 Cush. 271, 274, the vendee may "rescind the contract, and recover back the amount of his purchase money, as in case of fraud. But, if he does this, he must first return the property sold, or do every thing in his power requisite to a complete restoration of the property to the vendor, and, without this, he cannot recover." It has been held that the word "offer" as used in St. 1908, c. 237, § 69,* is synonymous with the word "tender," and we so interpret it. *Noyes* v. *Patrick,* 58 N. H. 618. *Milliken* v. *Skillings,* 89 Maine, 180, 183. *Mundt* v. *Simpkins,* 115 N. W. Rep. 325. Williston on Sales, § 610.

The defendant Collins contends that the plaintiff knew of the defects in the car almost immediately after it was delivered, that he waived his right to rescind by keeping it with knowledge of its condition and that his letter of June 2, 1913, quoted later in this opinion, was an express election so to do. *Bassett* v. *Brown,* 105 Mass. 551, 557.

---

* The provisions referred to are contained in the sales act in St. 1908, c. 237, § 69, cls. 3, 4, and are as follows:

"(3) Where the goods have been delivered to the buyer, he cannot rescind the sale if he knew of the breach of warranty when he accepted the goods, or if he fails to notify the seller within a reasonable time of the election to rescind, or if he fails to return or to offer to return the goods to the seller in substantially as good condition as they were in at the time when the property was transferred to the buyer. But if deterioration or injury of the goods is due to the breach of warranty, such deterioration or injury shall not prevent the buyer from returning or offering to return the goods to the seller and rescinding the sale.

"(4) Where the buyer is entitled to rescind the sale and elects to do so, the buyer shall cease to be liable for the price upon returning or offering to return the goods. If the price or any part thereof has already been paid, the seller shall be liable to repay so much thereof as has been paid, concurrently with the return of the goods, or immediately after an offer to return the goods in exchange for repayment of the price."

The answer to this contention is to be found in the admitted fact that it was understood that the machine should be taken to the garage of Clapp, or to that of Hersey on Talbot Avenue, in case of trouble, and that the bill should be sent to Clapp. Moreover, the plaintiff testified that he was told by Clapp and others that "a large portion of the trouble was due to the fact that he (Skillings) was not familiar with that type of car," and it might well be that at the time the letter was written he reasonably believed that such statement was true. But soon after the letter was written he was told by Collins "that the thing was all out of adjustment, it wasn't right at all, it was absolutely not at all as it should be."

Skillings then knew that the car was defective, and he stated after Clapp had told him that the car had been "made ship-shape and was running in good order," that he was thoroughly disgusted with the whole situation, that he did not see any point in his trying it at all, that he had been told a half dozen times by Clapp's people and the Talbot Avenue people that the thing was in first class order and would run all right, and then he would go and get it and have the same trouble with it.

After this conversation he tried the car again, and had the same kind of troubles with it as he had had for two months. He telephoned Clapp that "the deal was off;" that Clapp "could take the car; that he (Skillings) was through with it;" that "the car was out to Talbot Avenue and he (Clapp) could go and take it;" that "he thought the whole deal should be cancelled and that he should have his car."

On July 2, 1913, Skillings wrote to Clapp, "This is a formal notice to you that I shall not accept the Chadwick car — which is, as you know, now at the Talbot Ave. Garage, Dorchester. When I made the deal with you I had every right to assume that the car was in good condition, but for three months, despite the fact that your repair man and the Talbot Avenue Garage people have had the car practically all the time, it has never once been in anything like proper condition. I am done with it absolutely, and I would not have it at any price." Following this letter the car was not delivered to the defendant Collins, nor was there any offer to or tender of delivery to Collins or to Clapp, unless the letter in itself amounts to an offer to deliver. It

is clear that the letter expresses no more than a willingness or a proposal to return the car, and there is no evidence that Collins by word or act stated that he would refuse to receive the car if tendered.

No further tender or offer of tender of the car was made to the defendant Collins until August 6, 1913, when an attorney, Johnston, for Skillings, "told Collins that Skillings was through with the car, that he was ready to give it to Mr. Collins but wanted the Premier and the notes and the money which had been paid." On August 21, 1913, Collins stated to Johnston that he would not give back to Skillings his car, his money and his notes.

We are of the opinion that the facts disclose no legal excuse for the plaintiff Skillings's failure to deliver or to offer to deliver the car to the defendant Collins for the purpose of rescinding the sale between July 2, 1913, and August 6, 1913; and that upon the undisputed facts the plaintiff did not deliver the car or offer to deliver it to the defendant within a reasonable time after he had knowledge that the warranty was broken. *Bassett* v. *Brown, supra.*

The request that a verdict should be ordered for the defendant Collins should have been given.*    And in each case the entry must be

*Exceptions sustained.*

*J. E. Hannigan,* for Collins.
*D. H. Fulton,* for Skillings.

---

* This request was refused by *Fox*, J.   The action was not brought to recover damages for a breach of warranty.   The judge gave at the request of Collins the following instruction:   "If after knowledge of the facts the plaintiff — that is Skillings — elected to affirm the contract he cannot recover in this suit.   That request I give you because this suit is based on the disaffirmance of the contract, and if a party with his knowledge of the facts elected to affirm the contract he cannot now disaffirm the contract.   I give you that." The judge submitted the cases to the jury.   In the first case the jury returned a verdict for the plaintiff Skillings in the sum of $2,537.08 and in the second case returned a verdict for Skillings as defendant.   Collins alleged exceptions.