RYDER & BROWN COMPANY *vs.* E. LISSBERGER COMPANY.

Suffolk.    March 5, 10, 1936. — June 3, 1938.

Present: RUGG, C.J., FIELD, DONAHUE, LUMMUS, & QUA, JJ.

*Sale*, Rescission. *Tender*. *Practice, Civil*, Question of law or fact. *Words*, "Offer to return."

Letters sent promptly by a buyer to the seller of a carload of mohair shipped to the buyer from a distance, setting forth a statement in substance that the goods shipped were not those ordered, as was discovered by the buyer after examination, a request for instructions as to disposition of the goods, and a demand for a return of the purchase price properly could be found on the evidence to have been an unequivocal and unqualified notification and offer to return, necessary to effect a rescission under G. L. (Ter. Ed.) c. 106, § 58 (3).

The sufficiency of an offer by the buyer to return goods in rescission of a sale was not affected by his coupling his offer with a demand that the seller thereafter perform the contract of sale and a refusal to accede to a condition, which the seller attempted to impose on the rescission, that the buyer "call the entire transaction off."

The construction of the legal import of correspondence between the parties to an action being for the trial judge, he was not required to instruct the jury that "No inferences can be drawn from the correspondence which are contrary to the express statements contained therein."

CONTRACT. Writ in the Superior Court dated December 21, 1928.

At the trial before *Dillon*, J., the defendant asked for and the judge refused the following rulings:

"1. Upon all the evidence the plaintiff is not entitled to recover."

"34. Where after inspection the plaintiff claimed that the mohair was not what the contract called for, and so notified the defendant, and the defendant stated 'we are willing to take this car back and refund your money provided you will call this entire transaction off', and the plaintiff refused to return or offer to return said car on said conditions, the plaintiff has waived its right to rescind said sale."

"47. Where after inspection the plaintiff claimed that the mohair was not what the contract called for, and so notified the defendant and demanded the refund of the purchase price, and the defendant offered to refund said purchase price provided the plaintiff would return the goods and call the transaction closed, and the plaintiff in reply thereto insisted not only upon the refund of the purchase price, but also upon the 'immediate shipment of the kind of a car of mohair you sold us', the plaintiff cannot recover in this action."

"58. No inferences can be drawn from the correspondence which are contrary to the express statements contained therein.

"59. Nothing contained in the letters expressly or by inference can be construed as an effective rescission of the contract of sale.

"60. Where the statements in the correspondence expressly demand the return of the purchase price of the mohair coupled with the further demand for another car of mohair, no inferences can be drawn from said statements that the plaintiff was making an unequivocal offer to return the mohair."

A motion that a verdict be ordered for the defendant on the first and second counts of the declaration was denied. The jury found for the plaintiff on the first count in the sum of $19,966.78, and for the defendant on the second count. The defendant alleged exceptions.

*B. A. Sugarman*, for the defendant.

*R. B. Owen*, (*R. L. Ryder* & *A. S. Lawrence* with him,) for the plaintiff.

FIELD, J. This is an action of contract growing out of a contract of sale by the defendant to the plaintiff of a car of mohair. The declaration is in five counts — the second, third, fourth and fifth counts being added at various times by amendment. The first count is to recover the price paid by the plaintiff for a car of mohair. It contains allegations that a car of mohair was delivered to the plaintiff, that "upon inspection it appeared that said car was not in accordance with the contract and was not of the kind and character of mohair therein agreed upon," and that the plaintiff "did not accept delivery of the goods shipped to it, but on the contrary notified the defendant that it would not accept delivery thereof and rescinded its contract of sale and demanded return of the money paid by it thereunder." The second count is for damages for breach of contract in that the car of mohair delivered to the plaintiff "was not in accordance with the contract and was not of the kind and character of mohair therein agreed upon." The defendant made a motion that the court direct a verdict for the defendant and also a motion that it direct a verdict for the defendant on each of the five counts. Verdicts were directed for the defendant on the third, fourth and fifth counts. The jury returned a verdict for the plaintiff on the first count and for the defendant on the second count. The case comes before us on the defendant's exceptions to the denial of its motion for a directed verdict generally and on the first and second counts of the declaration, and to the refusal of the judge to instruct the jury as requested. No exception was taken by the defendant to the charge.

The evidence tended to show these facts: The plaintiff

had a place of business in Boston, the defendant a place of business in New York City. On or about September 5, 1928, the defendant entered into an oral contract with the plaintiff whereby the defendant agreed to sell and the plaintiff agreed to purchase one car of Fall Arizona mohair. On the same day the defendant sent to the plaintiff in Boston written confirmation of the agreement purporting to "confirm sale of one (1) Car Fall Arizona Mohair at fifty-six (56c) cents per pound . . . F. O. B. Net Cash, Sight Draft against Bill of Lading." A car of mohair was shipped by A. Cohen & Company from Texas, under a negotiable order bill of lading issued by the carrier railroad corporation. This bill of lading consigned the goods to the "order of A. Cohen and Company," with a notation "notify E. Lissberger & Co." It was indorsed in blank by the shipper — the consignee. On November 24 the defendant sent an invoice to the plaintiff billing the shipment in the amount of $14,839.83, and on November 26 the defendant drew a draft in said amount on the plaintiff corporation. The draft with bill of lading attached subsequently came into the possession of the National Shawmut Bank of Boston, which immediately notified the plaintiff. On December 1 the plaintiff paid the draft by check to the bank and received the bill of lading. The bank in turn sent the money to the Manufacturers Trust Company of New York for the defendant. The plaintiff delivered the bill of lading to its trucking company. On or about December 4 the trucking company delivered the bill of lading to the railroad corporation, received the mohair and transported it to the plaintiff's warehouse. Shortly after the delivery of the mohair to the plaintiff's warehouse, an inspection thereof was made by the plaintiff and it was found not to be substantially of the class and character called for by the contract. There was evidence that the "mohair delivered was New Mexico mohair which is entirely different from and not merchantable as Arizona mohair," and that "New Mexico mohair cannot be used for the same purposes as Arizona mohair."

Between December 4, 1928, and the commencement of this action on December 21, 1928, there was an exchange

of letters between the plaintiff and the defendant, material portions of which are set out in a footnote.* On December 14, 1928, the plaintiff drew a demand draft on the defendant for the amount of the price paid, but the draft has not been paid. There was evidence that the plaintiff kept the mohair

* On December 4 the plaintiff sent a letter to the defendant in New York in which it said: "The lot is here subject to your order, and we wish you would return to us the check which we mailed you in payment, and also make immediate shipment of the kind of a car of mohair you sold us." On December 8 the defendant, by a letter, suggested an adjustment of the matter by making an allowance and stating that "there is no justification on your part to expect us to take back the Arizona as that is what we sold you." On the same date the plaintiff sent a letter to the defendant in which it referred to the "car of mohair which we have rejected and are holding subject to your order." On December 11 the plaintiff sent another letter to the defendant in which it stated: "We have sold a carload in good faith and expect you to deliver one that we can deliver to our customer. Pending the time you make such delivery, you will please return our check to us at once. If not, we shall see fit to draw on you for the amount on Friday, the 14th of December. We trust that you will not make this procedure necessary. The car that you have shipped is here subject to your order and we would like to have you take it away as we not only need the room but do not wish to have such an accumulation in our store." The defendant replied on December 12 stating that "we are giving you the privilege of rejecting and we refund your money but this is the only way we can and will do this and if you will agree to this and will advise us to that effect we will instruct you as to the disposition of the car." On December 13 the plaintiff sent a letter to the defendant in which it refers to the defendant's asking the plaintiff "to either accept or reject it against our purchase of a car of Arizona Fall Mohair," and states, "You then presume to dictate to us the extent of telling us we must call the entire transaction off or you will not refund our money — which would be the grossest breach of business etiquette that we have ever known. In one last effort to put before you our opinion of the proper procedure in this transaction — you should have refunded our money, apologized for having held it after knowing that the car of mohair was not a proper delivery, and then asked us to set aside what Arizona hair might be in the car and give us an opportunity to take this, if we wished, together with enough more to make a full carload. . . . If you have not already returned our check we want you to wire us that you are doing so at once so that we may not be obliged to draw on you for the amount, as we shall do tomorrow afternoon unless we hear from you that you have mailed the check." On December 14 the plaintiff sent a letter to the defendant stating that it had drawn a demand draft on the defendant. On the same day the defendant wrote to the plaintiff "I cannot agree with the position which you are endeavoring to take in the matter in dispute. We sold you the car of mohair just as we bought it and made no representation whatsoever as to it being a fair average. You now claim you knew at the time of making the purchase it could not be a good car. We have discussed the matter at length and it seems little use in going into it further and we sincerely regret we have come to a misunderstanding in this matter. We have already advised you of our willingness to take the car back and refund your money and that is as far as we will go." On December 18 the plaintiff wrote to the defendant: "While you have, as you say, shown your willingness to take the car back and refund us our money, you have seen fit to dictate the terms on which you will do this, and you have already lost your right to dictate. Your first obligation is to refund the money; and your second — to offer to deliver a car of Arizona Fall Mohair. We have drawn on you as we advised you, but unfortunately our bookkeeper was lenient enough to let the draft go along without protest. We have now asked the bank to protest the draft unless it is paid."

that was delivered to it segregated so that the defendant could have it, but never received instructions where to ship it. After the action was commenced there was further correspondence relating to the adjustment of the matter.

First. There was no error in the denial of the defendant's motion for a directed verdict generally or of its motion for a directed verdict on the first count. Under the first count of the declaration the plaintiff seeks, on the basis of rescission of the contract of sale (a term which is broad enough to include either a "contract to sell" or a "sale" as defined in the sales act, G. L. [Ter. Ed.] c. 106, § 3 (1), (2), Williston on Sales [2d ed.] § 2, see *Low* v. *Pew*, 108 Mass. 347, 349), to recover the price paid by it — not to recover damages for breach of warranty or other breach of the contract. The evidence warranted a finding for the plaintiff on this ground and, consequently, on the declaration as a whole.

1. There is no contention that the confirmatory letter of September 5, 1928, did not state correctly the terms of the contract or that the case is not governed by the law of this Commonwealth. There was, therefore, a contract of sale, executory on both sides, contemplating performance by shipment, under a bill of lading, of a car of mohair corresponding with the description in the contract, and payment, concurrently with receipt of the bill of lading, of the accompanying sight draft. Compare G. L. (Ter. Ed.) c. 108, § 38. We assume, for the purposes of this case, in accordance with the statements of the judge in his charge — without discussing the principles of law involved — that, "as matter of law, title" to the car of mohair shipped "passed to the plaintiff when it paid the sight draft and obtained possession of the bill of lading," and that "if the title passes the right to reject is gone. The right to rescind alone remains" - - apart, of course, from the alternative right to recover damages, which is also dealt with in the charge.

2. The evidence warranted a finding that the mohair shipped did not correspond with the description in the contract — being different in kind from the mohair referred to therein and not merely defective in quality — and, consequently, that it was not the mohair sold, and that there was,

therefore, a breach of the implied warranty of identity that the mohair should correspond with the description. See . G. L. (Ter. Ed.) c. 106, § 16; *Gardner* v. *Lane*, 9 Allen, 492, 499–500; *S. C.* 12 Allen, 39, 47–48; *Harvey* v. *Harris*, 112 Mass. 32, 37; *Hecht* v. *Batcheller*, 147 Mass. 335, 338; *Inter-State Grocer Co.* v. *George William Bentley Co.* 214 Mass. 227, 231; *Schmoll Fils & Co. Inc.* v. *S. L. Agoos Tanning Co.* 256 Mass. 195, 201; *Scott* v. *Reasoner*, 279 Mass. 241, 243. See also Williston, Sales (2d ed.) §§ 277, 278.

3. Even though the property in the mohair shipped passed to the plaintiff under the bill of lading and the plaintiff received it thereunder and had no right to examine it before paying the draft (G. L. [Ter. Ed.] c. 106, § 36), the plaintiff was entitled to examine the mohair thereafter to determine whether it corresponded with the description in the contract and, if it did not, to rescind the sale and "recover the price . . . which has been paid" on the ground of breach of warranty of identity. G. L. (Ter. Ed.) c. 106, § 58 (1) (*d*), (3). *Alden* v. *Hart*, 161 Mass. 576, 581. *Orr Felt & Blanket Co.* v. *Sherwin Wool Co.* 248 Mass. 553, 557. *Schmoll Fils & Co. Inc.* v. *S. L. Agoos Tanning Co.* 256 Mass. 195, 201–202. *Delaware, Lackawanna & Western Railroad* v. *United States*, 231 U. S. 363, 372. Williston, Sales (2d ed.), § 474. Such a rescission revests the property in the goods in the seller and, if "the seller refuses to accept an offer of the buyer to return the goods," the buyer is thereafter "deemed to hold the goods as bailee for the seller." G. L. (Ter. Ed.) c. 106, § 58 (5). It could have been found that the plaintiff exercised its right to examine the mohair within a reasonable time and in a reasonable manner, and that such examination disclosed that the mohair did not correspond with the description in the contract. *Adams* v. *Grundy & Co. Inc.* 252 Mass. 135, 144. The removal of the mohair to the plaintiff's warehouse before examination did not preclude rescission (see *Adams* v. *Grundy & Co. Inc.* 252 Mass. 135, 138, 144), and the evidence warranted a finding that nothing in the subsequent dealings of the plaintiff with the mohair was so inconsistent with ownership thereof by the defendant as to preclude rescission .

by the plaintiff. See *Gottman* v. *Jeffrey-Nichols Co.* 268 Mass. 10, 12.

4. The plaintiff, however, could not rescind the sale and recover the price paid thereunder upon the basis of rescission for breach of warranty if he failed "to notify" the defendant "within a reasonable time of the election to rescind," or failed "to return or offer to return the goods to the" defendant. G. L. (Ter. Ed.) c. 106, § 58 (3). *Edison Fixture Co. Inc.* v. *Maccaferri*, 250 Mass. 460, 461–462. The defendant contends that the evidence did not warrant a finding that these requirements were met. This contention cannot be sustained.

5. The evidence warranted a finding that there was a sufficient "offer to return" the mohair within the meaning of the statute. The defendant relies on the case of *Skillings* v. *Collins*, 224 Mass. 275, 277, where the evidence did not show an "offer to return" sufficient to support an action for rescission. Apparently in that case delivery of the goods was made to the buyer at the seller's place of business and the goods were readily susceptible of return to that place. The court said: "As was said by Shaw, C.J., in *Dorr* v. *Fisher*, 1 Cush. 271, 274, the vendee may 'rescind the contract, and recover back the amount of his purchase money, as in case of fraud. But, if he does this, he must first return the property sold, or do every thing in his power requisite to a complete restoration of the property to the vendor, and, without this, he cannot recover.' It has been held that the word 'offer' as used in St. 1908, c. 237, § 69 [now G. L. (Ter. Ed.) c. 106, § 58], is synonymous with the word 'tender,' and we so interpret it. *Noyes* v. *Patrick*, 58 N. H. 618. *Milliken* v. *Skillings*, 89 Maine, 180, 183. *Mundt* v. *Simpkins* . . . [81 Neb. 1]. Williston on Sales, § 610". See *Raymond Syndicate, Inc.* v. *American Radio & Research Corp.* 263 Mass. 147, 155. In *Milliken* v. *Skillings*, 89 Maine, 180, 183, the court said: "In the discussion of this question the word 'offer' is frequently used by courts and text writers as synonymous with 'tender', and it may be properly so used with reference to articles capable of manual delivery and actually produced . . . . But with respect to

heavy articles of merchandise situated at a distance from the place to which they must be transported if restored to the vendor, the phrase 'offer to return' is more commonly and more aptly employed to express a willingness, or to make a proposal to rescind the contract and return the goods. It is not sufficient, however, for a buyer who has taken delivery of the goods at the vendor's place of business, merely to express a willingness or make a proposal to return the goods, or simply to give notice to the seller that he holds the goods subject to his order, or to request him to come and take them back." This and other language of the court in *Milliken* v. *Skillings*, was quoted in *Mundt* v. *Simpkins*, 81 Neb. 1, 5. The interpretation of the word "offer," in G. L. (Ter. Ed.) c. 106, § 58, as "tender" must be taken with these limitations.

The evidence warranted a finding that the mohair was not delivered to the plaintiff at the defendant's place of business and such a finding would make inapplicable the rule relating to such a delivery. We need not decide, however, whether delivery was made — or could be found to have been made — when the mohair was delivered to the carrier in Texas, when the bill of lading was received by the plaintiff from the bank, when the car of mohair reached its railroad destination under the bill of lading, or when the mohair was removed from the car by the plaintiff at such destination. The place to which the mohair should be returned in order to restore the property therein to the defendant is not so definitely fixed by law or by the contract, that adequate proposal to return such mohair to the defendant and a segregation thereof in the plaintiff's warehouse available for such return, pending — at least for a reasonable time — instructions from the defendant as to the disposition of the mohair, could not be found to constitute an "offer to return" within the meaning of the statute. Findings could have been made on the evidence that the mohair was segregated by the plaintiff in its warehouse available for return upon instructions from the defendant as to its disposition, that the plaintiff immediately upon discovery that the mohair did not correspond with

the description in the contract, and twice within a week thereafter, notified the defendant that the mohair was held subject to its order, and that the defendant, though having opportunity to do so, gave no instructions for the disposition of such mohair.   Unless insufficient on grounds other than the failure of the plaintiff actually to return the mohair to the defendant, a sufficient "offer to return" could have been found, and it could have been found that the defendant refused to accept such offer.

On the evidence it could have been found that the "offer to return" was not insufficient on any other ground.   It could have been found to have been unqualified.   A finding was warranted that it was not conditional upon further performance of the contract by the defendant, even though the plaintiff insisted on some further action.   This is the interpretation to be given to the plaintiff's letters to the defendant which were in evidence.   Such insistence upon further action by the defendant did not qualify the "offer to return."   There is no suggestion in the letters from the plaintiff to the defendant that the plaintiff was retaining, or proposed to retain, the car of mohair delivered, pending delivery of another car of mohair.   The statement in one of the letters that the defendant should have asked the plaintiff to set aside a part of the hair in the car and given it an opportunity to take such hair together with enough more to make a full carload, if it wished to do so, was made not as a qualification upon the "offer to return," but, rather, as a suggestion of a possible adjustment of the matter without waiver of the legal rights of the plaintiff.   Furthermore, though these letters tend to show that the plaintiff contemplated that the return of the mohair and repayment of the purchase price should be concurrent acts, they do not show that the "offer to return" was conditional upon such repayment by the defendant, even if, as we do not intimate, such a condition would vitiate the "offer to return."   See G. L. (Ter. Ed.) c. 106, § 58 (5); 2 Am. Law Inst. Restatement: Contracts, § 349 (3).   And the defendant could not avoid the effect of a refusal to accept a sufficient "offer to return" the mohair by offering to accept a return if the

plaintiff would "agree" to "call the entire transaction off."
It had no right to impose that condition.   Compare *Richard-
son* v. *Boston Chemical Laboratory,* 9 Met. 42.   Failure or
refusal of the plaintiff to make such an agreement was not
inconsistent with a sufficient "offer to return," or "election
to rescind," even though, if the plaintiff claimed and was
granted the remedy of rescission, no other remedy could
thereafter be granted.   See G. L. (Ter. Ed.) c. 106, § 58 (2).
Moreover, it could have been found that the plaintiff kept
good its "offer to return."

6. The evidence warranted a finding that sufficient no-
tice was given by the plaintiff to the defendant of the
plaintiff's "election to rescind."   The notice, if it was suffi-
cient in other respects, was seasonable — or at least could
have been so found.   See *Cannon* v. *Page & Baker Co.* 281
Mass. 533, 537.   The plaintiff's first letter with respect to
the matter, according to the evidence, was sent on the day
the mohair was delivered at its warehouse, or, at most,
within three days thereafter.   In that letter the plaintiff
notified the defendant of the breach of warranty and asked
for repayment of the purchase price.   Notice of election
by the plaintiff that it would not treat the delivery of the
car of mohair as full or even partial performance of the
contract, and demand by the plaintiff for repayment of the
entire purchase price paid are clearly shown by this and
subsequent letters.   The plaintiff, up to the time the pres-
ent action was commenced, presented to the defendant no
alternative to such repayment.   In this respect the case
differs from *Barry* v. *Cronin,* 272 Mass. 477, 482.   Further
performance of the contract to sell was not presented to
the defendant as a possible substitute for repayment of the
price, as in *Cannon* v. *Page & Baker Co.* 281 Mass. 533,
537–538.   The plaintiff's demand for repayment of the
price, shown by its letters, was unambiguous and unquali-
fied.   These facts, together with the fact, which could have
been found, that the plaintiff made an unqualified "offer
to return" the mohair, would show an election by the
plaintiff to rescind the executed sale and notice to the de-
fendant of such election.

The defendant, however, contends, in substance, that it could not have been found that the plaintiff made a sufficient "election to return" or notified the defendant thereof, for the reason that the plaintiff demanded further performance by the defendant of the original contract to sell a car of mohair such as was therein described. This contention cannot be sustained. We assume in favor of the defendant that the references in the plaintiff's letters to further performance were in the nature of a demand for such performance as matter of right under the original contract to sell, rather than as matter of "business etiquette" and fair dealing. But the remedy of rescission for breach of warranty, which is given by the statute to a buyer where the goods have been delivered and property therein has passed to such buyer, is rescission of the "sale," that is, of the transfer of the property in the goods as distinguished from rescission of the "contract to sell." G. L. (Ter. Ed.) c. 106, § 3 (1), (2); § 58 (1) (*d*), (3), (4), (5); § 65. The statute permits such a buyer upon rescinding the "sale" and returning or offering to return the goods to "recover the price . . . which has been paid." § 58 (1) (*d*). Apparently it is contemplated by the statute that a rescission of the "sale" shall effect a rescission of the entire transaction. Whether upon such a rescission the buyer in any case may not only recover the price under G. L. (Ter. Ed.) c. 106, § 58 (1) (*d*), but may also recover special damages (see § 59) need not be decided. See Williston, Contracts (Rev. ed.), § 1464. But the buyer's statutory remedy, alternative to rescission, is to "keep such goods" and either set up the breach of warranty by way of recoupment or maintain an action for damages for such breach. § 58 (1) (*a*) (*b*). Plainly the plaintiff did not elect this remedy. An attempt on the part of a buyer to preserve rights in the "contract to sell" may in some circumstances indicate that the buyer has not elected to rescind the "sale." But on the evidence in this case of an unqualified "offer to return" the goods, and an unqualified demand for repayment of the price, it cannot be ruled that the plaintiff did not elect to rescind the "sale" and manifest such an elec-

tion to the defendant by a sufficient notice, or that such election was vitiated by the attempt of the plaintiff to obtain further performance by the defendant. It cannot be ruled that the plaintiff is precluded by this attempt from recovering the price on the basis of rescission of the "sale."

Second. The defendant was not prejudiced by the denial by the trial judge of its motion for a directed verdict on the second count of the declaration since the jury found for the defendant on this count.

Third. There was no error in the refusal of the judge to instruct the jury as requested by the defendant. He was not required to instruct them, as requested, that "No inferences can be drawn from the correspondence which are contrary to the express statements contained therein." The construction of the letters was a matter of law for the court, to be dealt with in instructions to the jury. *Ellis* v. *Block,* 187 Mass. 408, 411–412. *Kehlor Flour Mills* v. *Linden,* 230 Mass. 119, 122–123. But while, upon proper request therefor, the defendant was entitled to have the meaning of the letters stated, he was not entitled to a statement of a principle of construction such as is embodied in this request. The other requests for instructions were denied rightly for reasons already stated and require no further discussion.

*Exceptions overruled.*