BABCOCK COAL COMPANY *vs.* CITY OF BOSTON.

Middlesex.    November 18, 1938. — July 7, 1939.

Present: FIELD, C.J., DONAHUE, LUMMUS, DOLAN, & RONAN, JJ.

*Sale,* Acceptance, Seller's rights. *Contract,* Performance and breach. *Municipal Corporations,* Contracts. *Boston. Practice, Civil,* Entry of judgment, Interest.

Coal received, retained and used by a purchaser rightly was found to have been "accepted" by him within G. L. (Ter. Ed.) c. 106, § 37.

The city of Boston, notwithstanding St. 1890, c. 418, § 6, was liable for the purchase price of coal conforming substantially though not exactly to requirements of the contract of sale, if it was accepted and used by the city without objection or any claim based on breach of warranty.

Affirmation by this court of an order for judgment for the plaintiff upon the report of an auditor whose findings were to be final did not prevent computation of interest to the date of the judgment.

CONTRACT. Writ in the Superior Court dated March 4, 1937.

Judgment for the plaintiff was ordered by *M. Morton,* J.

*E. K. Nash,* Assistant Corporation Counsel, (*H. Parkman, Jr.,* Corporation Counsel, with him,) for the defendant.

*L. Withington,* (*E. C. Park* with him,) for the plaintiff.

LUMMUS, J. The plaintiff had a written contract with the defendant for the furnishing of coal to individuals upon the order of the overseers of the public welfare department

in 1935 and 1936. What the plaintiff proposed to furnish was coal known as "Belle Wyoming & Carbondale coal," produced at the "mines" of "Kehoe Berge Coal Co." at Pittston, Pennsylvania, and "to be purchased" from H. N. Hartwell & Son, Inc. The general specifications of the contract called only for "chestnut size of fresh-mined American anthracite of best quality shipped from mines located in" certain named counties in Pennsylvania. The coal was to be subject to rejection "if it contains more than 16 per cent of ash in the dry coal." If the ash content exceeded fifteen per cent, a small deduction in price was provided, and if it was less than thirteen per cent, a small additional price was to be paid. The contract provided: "The coal shall be prepared by passing through a $1\frac{5}{8}$ inch round mesh screen and over a $1\frac{3}{16}$ inch round mesh screen. Coal shall be subject to rejection if it contains more than 5 per cent of oversize or 15 per cent of undersize."

The Kehoe Berge Coal Co. is not the name of a mine, but is the name of an anthracite producing company which operates a number of mines near Pittston, in the Northern coal field of Pennsylvania. Belle Wyoming is the name given by H. N. Hartwell & Son, Inc., a wholesaler of coal (of which the plaintiff is a wholly owned subsidiary) to coal produced from certain of those mines and sold through a subsidiary of Kehoe Berge Coal Co. called Anthracite Sales Company. Carbondale coal is produced by the DeAngelis Coal Company near Carbondale, Pennsylvania, about twenty miles from Pittston, and also in the Northern coal field.

Acker coal comes from Centralia, Pennsylvania, in the Eastern Middle coal field, and within the counties specified in the contract. It is not as free burning as Belle Wyoming or Carbondale coal. Whether the defendant was influenced in awarding the contract to the plaintiff by the free burning quality of the latter kinds of coal, the auditor was unable to find. Apart from that matter, there was no perceptible difference in the qualities of the three kinds of coal. But in the autumn of 1935 production of Acker coal was resumed after a long period of inactivity, and H. N. Hart-

well & Son, Inc., became exclusive agents for it. Soon the plaintiff ceased to buy Belle Wyoming and Carbondale coal, and used Acker coal to make its later deliveries under the contract. "The reason why Acker coal was substituted for Belle Wyoming and Carbondale coal was that it was to the financial advantage of the plaintiff, or the H. N. Hartwell & Son, Inc., as the sole owner of the plaintiff, to do so. The contract between the plaintiff and the defendant turned out to be an unprofitable contract so far as the plaintiff was concerned, and the loss sustained would have been greater if the plaintiff had continued to purchase and deliver Belle Wyoming and Carbondale coal." The substitution was intentional. The defendant first learned of it in the middle of April, 1936, when most of the coal in question had been delivered, and refused to pay the plaintiff's unpaid charges for the delivery of Acker coal, amounting to $57,044.74, for which the present action is brought.

The evidence showed no damage or loss resulting from the substitution, and no recoupment for breach of warranty is claimed. The defendant's contention is that nothing can be recovered. The auditor, whose findings of fact were to be final, found for the plaintiff in the sum of $57,044.74, and interest. The judge ordered judgment for the plaintiff upon the auditor's report, and the defendant appealed under G. L. (Ter. Ed.) c. 231, § 96. *Franklin A. Snow Co.* v. *Commonwealth, ante,* 511.

A possible construction of the contract is, that although the plaintiff declared its intention to deliver either Belle Wyoming or Carbondale coal, its agreement was simply to deliver "chestnut size of fresh-mined American anthracite of best quality shipped from mines located in" the counties named, and otherwise conforming to the contract. If that construction should be adopted, there would be no breach of contract on the part of the plaintiff. But even if the plaintiff agreed to supply Belle Wyoming or Carbondale coal, that agreement was no more than a warranty. Even if we were to disregard the special provision of the contract that "if coal is delivered which does not conform to the foregoing specifications in every respect, it shall be subject

to rejection and the dealer shall be required either (1) to forthwith remove the coal at his expense and replace it forthwith with other coal satisfactory to the fuel chemist . . . or (2) to accept in full compensation therefor such amount as the fuel chemist . . . decides ought to be paid for the coal delivered," we think that complete immunity for the defendant would be contrary to the provisions of the sales act.

The coal was all retained and used without objection. The auditor rightly found that it was "accepted" within G. L. (Ter. Ed.) c. 106, § 37. Acceptance does not of itself discharge the seller from liability for breach of warranty, nor prevent rescission for breach of warranty.    § 38.    But a buyer, who has received and retained the benefit of the goods, cannot avoid payment altogether on the ground that they did not conform to the contract.    Dorr v. Fisher, 1 Cush. 271.    G. L. (Ter. Ed.) c. 106, § 58.    Schmoll Fils & Co. Inc. v. S. L. Agoos Tanning Co. 256 Mass. 195, 201, 202.    Heyman v. DeChristopero, 259 Mass. 29.    Ryder & Brown Co. v. E. Lissberger Co. 300 Mass. 438, 444–446. Denenberg v. Jurad, 300 Mass. 488.    This applies to municipalities equally with other buyers.    Wiley v. Athol, 150 Mass. 426.    Reading Steel Casting Co. v. United States, 268 U. S. 186.

The statute relied on by the defendant, St. 1890, c. 418, § 6, making special requirements for contracts which were complied with in the contract in question, does not prevent the application of the sales act to the contract so as to permit recovery for something other than the exact performance of the contract according to its terms.    See Morse v. Boston, 253 Mass. 247.

The affirmance of the order for judgment will not prevent the computation of interest to the date of the judgment.    Rudnick v. Rudnick, 281 Mass. 205, 208.

Order for judgment affirmed.