JOHN F. KENNEDY *vs.* B. A. GARDETTO, INC.

Suffolk.    February 9, 1940. — June 3, 1940.

Present: FIELD, C.J., DONAHUE, QUA, DOLAN, & COX, JJ.

*Contract,* Construction. *Bailment. Damages,* For breach of contract.
    *Practice, Civil,* Auditor: report; Case stated; Waiver.

Provisions of a contract in writing for letting machinery and equipment,
    that "expense of all minor repairs . . . and of all major repairs re-
    quired by . . . negligence or abuse of the equipment by the lessee or
    resulting from accidental causes, made during the rental period . . .
    shall be paid by the lessee," and that the "expense of major repairs not
    attributable to negligence or abuse by the lessee and not resulting from
    accidental causes, shall be paid by the lessor," did not exclude from the
    contract the implied term that the lessee as bailee should be obliged
    to return the bailed property to the lessor in as good condition as it was
    when received, reasonable wear and tear excepted, unless it was injured
    without the lessee's fault, and he therefore was liable to the lessor for
    expense through repairs made after the rental period and loss due to a
    damaged condition, both caused by negligence of the lessee.
A lessor of a machine which, after being damaged by negligence of the
    lessee, was continued in use by him though he knew it was unfit there-
    for by reason of insufficient repairs made by him, and, because of such
    use, when returned to the lessor, was incapable of being made fit for
    use, was entitled to recover from the lessee the rent of the machine
    stipulated in the lease as well as for loss of its value.
By an agreement of the parties that findings of fact by an auditor shall
    be final, his report constitutes a case stated and questions as to the form
    of action are waived.

CONTRACT. Writ in the Municipal Court of the City of
Boston dated March 29, 1939.

On removal to the Superior Court, the action was heard by *Williams*, J., who ordered judgment for the plaintiff in the sum of $5,015.95.

The case was submitted on briefs.

*J. W. Blakeney, Jr.*, for the defendant.

*Joseph Joyce Donahue*, for the plaintiff.

Cox, J.   The plaintiff seeks to recover the agreed rental of certain machinery which was the subject matter of written agreements between the parties, and also to recover the cost of repairs thereto, for damage allegedly caused by the defendant's negligence, and the cost of parts that were missing when the machinery was returned.  The case was referred to an auditor whose findings of fact were to be final. A judge of the Superior Court ordered judgment for the plaintiff in the amount found due by the auditor, together with interest, and the defendant appealed.  G. L. (Ter. Ed.) c. 231, § 96.   *Babcock Coal Co.* v. *Boston*, 303 Mass. 518, 520.

No question is raised as to the amounts that were found due for rental except as to one machine, and the defendant states in its brief that the principal questions involved relate (1) to the defendant's liability, if any, under the several agreements for the expense of repairs, missing parts, replacements and other damage to the rented equipment after the rental periods, as defined by the contracts, had ended; (2) to the defendant's liability, if any, for the rental of $650, found by the auditor to be due for the use of a crane boom after it had been damaged while in the defendant's possession, as hereinafter appears.  The rental terms are described in three written agreements which, by reference, incorporate the rental conditions or rental rates adopted by the New England Road Builders Association.  The provisions of the rental conditions, so far as material, are that "when the equipment is shut down for repairs over a period of two hours" the lessor shall give certain credit rental allowances (note 2), and that the "expense of all minor repairs resulting from any cause whatsoever and of all major repairs required by reason of negligence or abuse of the equipment by the Lessee or resulting from accidental causes, made during the

Rental Period, including labor, materials, parts and other items, shall be paid by the Lessee. The expense of major repairs not attributable to negligence or abuse by the Lessee and not resulting from accidental causes, shall be paid by the Lessor" (note 7).

The rented machinery consisted of a gasoline shovel, a crane boom and accessories, a Blaw-Knox dragline bucket and a Page dragline bucket. During the rental period, the shovel "broke down" several times, was repaired by the defendant at its own expense, and was put back into operation. When it was returned to the plaintiff, it needed repairs as a result of its negligent use and abuse by the defendant's employees, and several of its parts were missing due to the defendant's negligence. The negligent use and abuse and the resultant need of repairs had been reported to the plaintiff during the rental period by the operator of the shovel, who was an employee of the plaintiff although his wages were paid by the defendant in accordance with one of the written agreements, and during the rental period the plaintiff never requested or required the defendant to make the necessary repairs. The plaintiff had no knowledge that the parts were missing until the shovel was returned. After its return, he made such repairs as were necessary to put the shovel in as good working condition as it was in when rented, and he replaced the missing parts. The reasonable attendant cost is included in the amount found due from the defendant.

The Blaw-Knox dragline bucket and the Page dragline bucket likewise needed repairs as the result of the defendant's negligence. The repairs have not been made, and several of their parts were missing and the missing parts have not been replaced, but the fair and reasonable cost necessary to make these repairs and replacements is likewise included in the amount found due from the defendant.

As a result of the negligence of the defendant, the crane boom was damaged and the plaintiff, when notified, sent his representative to inspect it and also instructed the defendant to have it repaired, whereupon the defendant selected a machinist to do the work. This machinist, how-

ever, repaired only a part of the damage, doing a "patch" job, as a result of which, taking into account the fact that full repairs were not made, the boom was rendered unfit and unsafe for use.  Thereafter, however, the defendant used it, despite the fact that the exercise of good judgment would have precluded such use.  Upon its return, the boom was in such condition that it could not be made fit and safe for use.  The amount representing the difference between the fair market value of the boom when delivered to the defendant and the fair market value when returned was "the damage sustained by the plaintiff as a result of the negligent manner in which the defendant's employees used said boom," and is included in the amount found due from the defendant.  The plaintiff made no claim for the payment of this amount until after suit was brought.  An item in his declaration, however, is for damage to the boom in the amount which the auditor later found was its fair value when delivered to the defendant and from which, in determining the amount of the damage, the auditor deducted its value when returned.  Some of the purposes of the plaintiff in furnishing the operator for the shovel were to afford him the opportunity to "protect" the shovel and other rented equipment from damage from any cause and to see that all repairs were made and paid for by the defendant during the rental period.  The amount of damage sustained by the plaintiff "as a result of the negligent manner in which the defendant's employees used said boom" and the reasonable cost of replacing missing accessories are included in the amount found due from the defendant.

1. The defendant contends that it is not liable for the cost of any repairs made or to be made, or of any missing parts supplied or to be supplied, after the rental period had ended.  Specifically, it contends that the construction of "Note 7" which, by the terms of the written agreements, applied to all of the machinery except the Page dragline bucket, requires the conclusion that the cost of any repairs that might be needed after the rental period, although due to negligent use by the defendant, is not chargeable to it.  It contends that the parties by their written agreements

have exhausted the subject matter of repairs, and that the court cannot write into these agreements anything that will render the defendant liable for such repairs by implication either of fact or of law.

It is a general rule of bailments that the duties of the hirer are to return the bailed property in as good condition as it was in when received, necessary wear and tear excepted, unless injured without his fault, and to pay the agreed compensation. *Eastman* v. *Sanborn*, 3 Allen, 594, 595. *Amiro* v. *Crowley*, 256 Mass. 53, 56. *Doherty* v. *Ernst*, 284 Mass. 341, 344. Limitations of these duties may be fixed by the terms of the contract, or by usage, but in the absence of an agreement, express or implied, they are a part of the contract of bailment. *Rotch* v. *Hawes*, 12 Pick. 136, 138. *Castle* v. *Mayer*, 217 Mass. 38. *Leach* v. *French*, 69 Maine, 389, 391. *Williamson* v. *Phillipoff*, 66 Fla. 549, 553, 554. 4 Williston, Contracts (Rev. ed.) § 1041. We are of opinion that this is not a case where the parties by their express agreements have excluded from consideration the liability of the bailee for its negligent use of the chattels that is a part of the contracts of bailment. It is true that the law will not imply a contract where there is an existing valid express contract embracing the same subject matter, nor a promise of any person against his own express declaration. *Brown* v. *Fales*, 139 Mass. 21, 28. *Gardiner* v. *Higgins*, 234 Mass. 350, 354–355. As was said by Bigelow, C.J., in *Gage* v. *Tirrell*, 9 Allen, 299, at pages 305–307: "But the exclusion of all implications must be confined to the same class or kind of acts or stipulations as that to which the express agreement or covenant relates. It cannot be extended so as to embrace matters concerning which the parties have made no stipulations. In other words, it cannot be said that a party is deprived of the benefit of all implied covenants in relation to the subject matter of a contract, because he has entered into express stipulations concerning certain specific incidents or particulars connected with or growing out of the contract. . . . The reason is, that in such cases the agreement expressed is not connected with and bears no necessary or direct relation to

that which is implied, and hence no just inference can be drawn that the parties intended by inserting one stipulation to exclude all other implied obligations on distinct and independent matters.  The only safe mode of applying the rule is to ascertain whether it can be fairly presumed, from that which is expressly stipulated, that the matter sought to be excluded was present to the minds of the parties when the agreement was entered into.  The exclusion can reasonably extend no further than to shut out all implied agreements and stipulations of the same nature or relating to similar matters. . . .  But if the contract contained no warranty at all, but consisted of stipulations on other matters, the warranty implied by law, if any, would still form part of the contract, and an action for a breach of it could be maintained. . . .  Indeed it may be said generally, that the maxim *expressum facit cessare tacitum* is never to be applied in the construction of contracts peremptorily and absolutely, so as to exclude from the contract everything not embraced in the stipulations of the parties.  Its legitimate and proper use is, to shut out implied agreements on the same or similar subjects as those concerning which the contract speaks; even such exclusion should be extended only so far as to subserve the plain intent of the parties."

Unless, therefore, the provisions of note 7 relieve the defendant of its duty of care in respect to the rented machinery, it seems clear that it is liable for repairs necessitated by its own negligence.  It is to be observed that the provisions of note 7, as contained in the agreements in the case at bar, go beyond the scope of the general rule as to the bailee's liability for his negligent use of the bailed property, in that they provide that all minor repairs resulting from any cause whatsoever, and all major repairs resulting not only from negligence or abuse of the equipment by the defendant, but also from accidental causes, shall be paid for by the defendant.  It is true that these repairs relate to those "made during the Rental Period" but we are of opinion that it was not the intention of the parties, by the incorporation of the provisions of note 7 into some of their

agreements, to cover the entire field of liability of the defendant for its negligence in the use of the machinery. It is unnecessary to decide whether the parties to a bailment of use may relieve the hirer from any liability for damage to the bailed chattel caused by his negligence. See *Sporsem* v. *First National Bank of Poulsbo,* 133 Wash. 199, 204. The point seems to be that if, during the rental period, the defendant wished to continue in the use of the machinery rather than to terminate its agreements by a return, and if repairs necessitated by the causes specified were made, it was required to pay for them. For example, whether the machinery broke down or not, the defendant could return it at any time. We think that by returning it in damaged condition, due solely to the defendant's negligence, the defendant would not be relieved from liability therefor. If it elected to retain the machinery, as it did, and to use it in its negligently damaged condition, it cannot be said that the provisions of note 7 absolved the defendant from the liability to pay damages for the consequences of its negligence. We are of opinion that the agreements into which the provisions of note 7 have been incorporated disclose merely an attempt to allocate the responsibility for repairs made during the life of the bailment without purporting to change what would otherwise be the law with regard to repairs necessarily made thereafter because of negligent use. There is a good reason for a definition of the duties of the parties during this particular period since in its absence the liability for repairs might well be a controverted question. See *Central Trust Co. of New York* v. *Wabash, St. Louis & Pacific Railway,* 50 Fed. 857; *German-American Bank of Seattle* v. *Normile,* 82 Wash. 368; *Tuttle* v. *Irvine Construction Co.'s Receiver,* 253 Ky. 538.

The defendant was under contract with the Commonwealth to dredge and divert the courses of certain rivers and streams in the western part of the State, work made necessary by the hurricane of September 21, 1938. The plaintiff's place of business was in Boston. The first agreement between the parties was made in November, 1938. From the nature of the work that was to be done, and the

season of the year, it would seem that the parties, and especially the defendant, were immediately concerned with the rental of machinery that could be used, if possible, and that by their agreements they sought to provide only for the repairs that would have to be made during the rental period in order to keep the machinery at work. The provisions of note 2 of the rental conditions, that rental credit allowances are to be made "when the equipment is shut down for repairs over a period of two hours," contemplate that repairs must be actually in process to entitle the defendant to any allowances.

To adopt the contention of the defendant would be to hold that the parties, by incorporating the provisions of note 7 into some of the agreements, intended that the defendant could virtually destroy the machines by negligent use, and, if no repairs were "made during the Rental Period," that it could terminate the bailments and relieve itself of all liability for its negligence by merely returning the machinery to the plaintiff. We cannot adopt this contention.

We think that the fact that an employee of the plaintiff was at the work and the fact of the plaintiff's purposes, already stated, in having him there do not require a different conclusion. These were not the only purposes. It well may be that another was to have some one at the work who could keep a record of the overtime during which the machinery was used, payment for which was provided by note 3 of the rental conditions. The fact of the matter is that certain repairs were not made during the rental period and there is no finding that any credit allowance was claimed or is due.

2. The defendant contends that it is not liable for rent of the crane boom "after the accident." It does not appear when the boom was damaged by its negligent use, but before and thereafter the defendant used it. The finding of rental due was warranted. It cannot be said, in considering the agreements, that the plaintiff, in giving instructions to the defendant to have the damage repaired, absolved the defendant from liability for its negligence in causing the dam-

age or waived his right to recover therefor. The repairs, such as they were, that were made to the boom during the rental period enabled the defendant to make further use of it although it was, in fact, unfit and unsafe for use. The general rule as to the liability of the defendant for the results of its negligent use of the machinery does not depend upon the precise degree of negligence or the amount of damage that results. It is concerned with placing the responsibility for the results of negligence upon the wrongdoer.

3. We think that the finding of the auditor relative to the cost of repairs that were made is not open to the objection that he did not make any allowance for reasonable wear and tear. For example, in the case of the shovel, he finds that it was in good working condition when delivered to the defendant. He then refers to its negligent use and abuse. In the case of the boom he makes similar findings, and also specifically refers to the damage sustained by the plaintiff as a result of the negligence of the defendant in the use of the boom and buckets. A reading of the report in its entirety leads to the conclusion that the auditor correctly applied the rule of law in arriving at the amount of the defendant's liability for its negligence.

4. In a general way the defendant suggests that there can be no recovery in an action of contract for any damage resulting from its negligence. The report of an auditor whose findings of facts are to be final constitutes a case stated. *United States Fidelity & Guaranty Co.* v. *English Construction Co.* 303 Mass. 105, 108, and cases cited. Where a case is submitted upon agreed facts, the parties waive all objections to the form of procedure. *Kimball* v. *Preston*, 2 Gray, 567. *Folger* v. *Columbian Ins. Co.* 99 Mass. 267, 277. *Brettun* v. *Fox*, 100 Mass. 234, 236. *Bacon* v. *Onset Bay Grove Association*, 286 Mass. 487, 489. See *Elliott* v. *Worcester Trust Co.* 189 Mass. 542, 544. As pointed out in *Frati* v. *Jannini*, 226 Mass. 430, at page 431, one of the ways in which a case at law may be presented for a decision on its merits is for the parties to agree on all the material ultimate facts on which the rights of the parties are to be determined by law. "The accurate phrase to ex-

press this way of presenting a case is 'case stated,' although not infrequently the words 'agreed facts' or 'agreed statement of facts' are used." The force and effect of an auditor's report whose findings of fact are not to be final are dealt with in *Lovell* v. *Commonwealth Thread Co. Inc.* 280 Mass. 243. See Rule 88 of the Superior Court (1932). But where the parties have agreed that the findings of fact of the auditor shall be final (see *Lovell* v. *Commonwealth Thread Co. Inc.* 280 Mass. 243, 247; *O'Hearn* v. *Adams*, 283 Mass. 200) so that the report constitutes a case stated, the parties have, in effect, agreed that a statement of facts shall be presented to the court which, to all intents and purposes, shall have the effect of a statement of agreed facts, and the rule as to the waiver of all forms of procedure applies. Nothing to the contrary was decided in *United States Fidelity & Guaranty Co.* v. *English Construction Co.* 303 Mass. 105, 108–109. There is no hardship in applying the rule in the circumstances. It does not appear that the question of admissibility of any evidence was raised before the auditor in the case at bar. An examination of the record discloses that the issues of fact were fully and fairly tried, and the technical objection now raised could be met, if necessary, by allowing appropriate amendments. *New England Foundation Co. Inc.* v. *Elliott & Watrous, Inc., ante,* 177, and cases cited.

It follows that there was no error.

*Order for judgment affirmed.*