Grafton,
No. 5164.

## MITTERSILL SKI LIFT CORPORATION

### *v.*

### STATE.

Argued November 5, 1963.
Decided December 30, 1963.

*Wyman, Bean & Tefft* and *Francis B. McCaffrey* (*Mr. Mc-Caffrey* orally), for the plaintiff.

*William Maynard,* Attorney General, and *Frederic T. Greenhalge,* Assistant Attorney General (*Mr. Greenhalge* orally), for the State.

LAMPRON, J. RSA 491:8 provides that "the superior court shall have jurisdiction to enter judgment against the state of New Hampshire founded upon any express or implied contract with the state."

The Trial Court found "that there was an express—or at least—an implied contractual obligation upon the State to use due care in its operation of the plaintiff's equipment of which it was a bailee for hire and an obligation to return said equipment in the condition in which it received the same, reasonable -wear excepted."

Following preliminary negotiations for the rental of this tractor between agents of the parties, an equipment rental agreement was executed on July 22, 1961, providing for an hourly rate to be paid by the State of $5.50 while the tractor was in operation. This agreement provided also that "the above rental price shall include all operating expenses and shall be effective during the calendar year 1961. Exceptions to the above are as follows: Fuel to be furnished by the Recreation Division, the cost of fuel will be deducted from the invoice." The State has raised no question as to the authority of its agents who executed this agreement.

The law is well settled that, absent an agreement by the parties to the contrary, the relationship created by the contract of bailment imposes on the bailee a duty to return the property to the bailor in as good condition as it was when received, necessary wear and tear excepted, unless injured without its fault. *Kennedy* v. *Gardetto Co.*, 306 Mass. 212; 4 Williston, Contracts (Rev. *ed*) s. 1041. Similarly, unless otherwise agreed, the contract of bailment makes a bailee liable for all repairs to the hired property rendered necessary by its own neglect or want of care. 8 Am. Jur. 2d., Bailments, s. 206, *p.* 1092.

The written agreement between the parties is silent on these matters. The specific stipulations in the contract concerning other matters "cannot be extended so as to embrace matters concerning which the parties have made no stipulations. In other words, it cannot be said that a party is deprived of the benefit of all implied covenants in relation to the subject matter of a contract, because he has entered into express stipulations concerning certain specific incidents or particulars connected with or growing out of the contract." *Kennedy* v. *Gardetto Co.*, 306 Mass. 212, 216.

The Trial Court could properly find, as it did, that there was an implied contractual obligation upon the State to use due care in its operation of the plaintiff's equipment of which it was a bailee for hire.

The Court could also find that there was an express contractual obligation upon the State to return the tractor in the condition in which it was received, reasonable wear excepted. The following testimony of plaintiff's agent was introduced without exception. "Q. Was there any agreement at that time with regard to the condition of the vehicle at the time that it would be

returned to Mittersill? A. As I told Mr. Avery [agent of the State], all we expected was it be brought back as good as it went other than wear and tear. Q. So that was agreed upon at that time, subject to the later supplying by the State to Mittersill of what a reasonable rental for the property was. A. Yes." The Court could find that this agreement was not intended to and did not become covered by the written rental agreement later executed by the parties. *Steinfield* v. *Monadnock Mills*, 81 N. H. 152; *Connell* v. *Company*, 88 N. H. 316, 318; 8 Am. Jur. 2d, Bailments, *s.* 281, *p.* 1169.

The Trial Court found "as a matter of fact that on the 17th day of August, 1961, certain agents and servants of the State of New Hampshire were negligent in the operation of a piece of equipment owned by the plaintiff otherwise known as a Bombardier tractor, as a result of which the said machine caught on fire, all to the damage of the plaintiff in the sum of $1,672.42."

There was evidence from which the Trial Court could find that the defendant's agents were told and knew that in the operation of this tractor the exhaust pipe became "real hot" and that care should be taken to prevent hay being transported from igniting. That they also knew that care should be exercised in insulating this pipe to prevent such an occurrence. The evidence also warranted a finding that an asbestos covering which they used as insulation was negligently installed in that it permitted hay chaffings to become lodged at or near the exhaust pipe, and that this negligence caused the fire which damaged plaintiff's tractor. *Hurd* v. *Railroad*, 100 N. H. 404, 408.

An employee of the defendant who had driven this tractor for some time and was driving at the time of the fire testified that flames came from the left rear portion of the vehicle between the bales of hay adjacent to the exhaust pipe; that on previous occasions he had removed hay chaffings from the gaps in the insulation but did not recall doing so on the day of the fire. He also testified that in his opinion the fire was started by hay chaff which must have gotten near the exhaust pipe. To admit the opinion of this witness over the objection of the defendant, the Trial Court must have found that it would aid in the determination of the facts. This finding was warranted and is sustained. *Ricker* v. *Mathews*, 94 N. H. 313. The fact that it bore directly on a main issue in the case did not render it inadmis-

sible. *Christie* v. *Company*, 87 N. H. 236, 239; *Rau* v. *Stores*, 97 N. H. 490, 495.

Defendant objected to the admission of a conversation which took place the day after the fire between plaintiff's manager and one Norton, the managing director of the Cannon Mountain Aerial Tramway, in the operation of which the tractor had been hired and was being used at the time of the fire. Plaintiff's agent testified that "Mr. Norton said 'We will take care of this' and that was all . . . Q. He was referring to the damages to the Bombardier? A. Yes."

This evidence could be found material on the issue of the State's obligation to return the hired tractor in substantially the same condition as it received it. It could also be found on the evidence that this statement was authorized and uttered in pursuance of the official duties of the maker as managing director of the Tramway for the State. *Caswell* v. *Maplewood Garage*, 84 N. H. 241; *Sargent* v. *Alton*, 101 N. H. 331; Restatement (Second), Agency, *s.* 286. His availability as a witness does not preclude the admissibility of his statement. 4 Wigmore, Evidence (3d *ed*) *s.* 1048.

Defendant's request for findings and rulings made after the Court's finding for the plaintiff was properly denied even under the alleged unusual circumstances existing in this case. RSA 491:15; *Manchester Amusement Co.* v. *Conn*, 80 N. H. 455.

The State's motions for judgment notwithstanding the verdict and for rehearing were also properly denied.

*Exceptions overruled.*

All concurred.